Clarence DIXON, et al., Plaintiffs,

v.

The CITY OF CHICAGO, et al., Defendants.

No. 86 C 4884.

United States District Court, N.D. Illinois, E.D.

June 30, 1987.

Rossie D. Alston, Jr., Milton Chappell, Glenn M. Taubman, Nat. Right to Work Legal Defense Foundation, Inc., Springfield, Va., Joseph Hahn, Arvey, Hodes, Costello & Burman, Chicago, Ill., for plaintiffs Clarence Dixon, et al.

Judson Miner, Jonathan P. Siner, David A. Johnson, Susan Sekuler, Office of the Corp. Counsel of the City of Chicago, Chicago, Ill., for defendant City of Chicago, Harold Washington, and Louis T. Galante.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

Harold Washington, Louis Galante, and the City of Chicago ("the City defendants") have moved to be dismissed from this § 1983 action challenging the constitutionality of fair share payments they collected pursuant to a collective bargaining agreement between the City and Chicago Firefighters Union, Local 2 ("the Union"). For the reasons stated herein, the motion is denied.

## FACTS

For purposes of this motion the court assumes the facts stated in the complaint to be true. Under Illinois law, public employees may enter into agency shop agreements whereby the employer requires its nonunion employees to pay a "fair share" fee to help defer the union's contract bargaining and grievance procedure expenses. Pursuant to this law, the City defendants agreed to the inclusion of an agency shop clause in its collective bargaining agreement with the Union, which serves as the exclusive bargaining representative of the City's firefighters.

Under the provision, the Union specifies the amount of the deduction to be withheld from the salary of nonunion employees; the City then deducts this amount from those employees' paychecks. Since May 15, 1986, the City has withheld agency fees equal to 87.5 percent of the dues paid by Union members. Neither the City nor the Union have disclosed any information justifying this deduction. The defendants also have failed to provide plaintiffs with an opportunity to challenge the withholding actions.

## LEGAL DISCUSSION

The plaintiffs assert that the defendants' actions violate the requirements for reasonable fair share deductions laid down by the Supreme Court in *Chicago Teachers Union, Local 1 v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). In *Hudson*, the Supreme Court held that a public employer may collect fees on behalf of a union only if the union had provided "an adequate explanation for the basis of the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decision maker, and an escrow for the amounts reasonably in dispute while challenges are pending." 106 S.Ct. at 1078. None of these standards, the plaintiffs assert, were met in this case.

The City defendants ask the court to dismiss this action for three reasons. They assert, first, that they have no independent obligation to establish a constitutionally adequate procedure for the deduction of fees.

They argue, rather, that the duty to implement the necessary notice and procedure falls entirely on the Union, with whose decision they merely comply. Second, the City defendants argue that the Illinois Local Labor Relations Board ("the Board") provides the prompt review by an impartial decisionmaker required by *Hudson*. Specifically, they argue that employees may bring fair share challenges under the unfair labor practice provisions of the Illinois Labor Relations Act. Finally, the City defendants claim that, since an indemnification clause included in the bargaining agreement shifts liability arising from compliance with the agency fee agreement onto the Union, there is no reason for the City defendants to remain in this lawsuit. The court addresses each argument in turn.

### A. The City Defendants' Obligation

■ The court rejects the City's argument that it itself has no duty to ensure or establish the constitutionally adequate procedure described by *Hudson* for two reasons. First, the logic of *Hudson* itself contradicts this argument. Action under color of state law is a necessary element of a § 1983 claim. The administration of an agency shop by a public employer constitutes such state action, the Court in *Hudson* implicitly acknowledged, when it upheld the plaintiff's § 1983 claim against the Union and school board there. After all, without such state action, plaintiffs might be precluded from challenging fair share questions; it is not yet clear whether private sector employees may state a similar cause of action against the employer or Union. *See Beck v. Communications Workers of America*, 800 F.2d 1280 (4th Cir.1986) (en banc), *cert. granted,* — U.S. ——, 107 S.Ct. 2480, 96 L.Ed.2d 372 (1987) (presenting this question).

Second, the City's argument is contrary to the express language of *Hudson*, where the court held that "the *government* and union have a responsibility to provide procedures that minimize the impingement [of first amendment rights] and that facilitate a nonunion employee's ability to protect his rights." 106 S.Ct. at 1076 n. 20 (emphasis

added). Given this express declaration of governmental responsibility, the court finds the City defendants' arguments to be without merit.

## B. Existing Review

■ The City defendants next assert that any obligations they face under *Hudson* are discharged by the existence of the Illinois Labor Relations Board. This reliance on the Board to protect the concerns expressed in *Hudson* is misplaced, however. In contrast to the city defendants' assertions, it is not clear that the Illinois Public Labor Relations Act, embodied in Ill.Rev.Stat. ch. 48 ¶ 1601, et seq., allows fair share challenges to be brought directly before the Board as unfair labor practices. The Board, which has "jurisdiction over collective bargaining agreement matters between employee organizations and units of local government," is nowhere given the power to resolve the kind of challenge plaintiffs press here. While the Board does have authority to hear unfair labor practices, the statutory enumeration of those practices suggests that it may not hear fair share cases. Indeed, Section 10(b)(1) states:

(b) it shall be an unfair labor practice for a labor organization or its agents:

(1) to restrain or coerce public employees in the exercise of the rights guaranteed in this Act, *provided that this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to ... the determination of fair share payments.*

Ill.Rev.Stat. ch. 48, ¶ 1610(b)(1) (emphasis added). Based on this clear language in the proviso, the court concludes that the Board is not an available forum for resolution of fair share disputes.

In *Bettinger v. Service Employees Int'l Union,* 3 Public Employment Rep. (Ill.Ed. ¶ 3004 (Dec. 12, 1986)), the General Counsel of the Board took a different view. There, he found that the Board's authority over fair share fees was "at least arguable" and proceeded to dismiss an agency fee challenge on the merits. Analogizing from interpretations of a proviso in the National Labor Relations Act concerning a union's right to determine its membership, the General Counsel concluded that fair share fees are not insulated from Board review where they impact upon other policies embedded in the labor statute. Rather, he suggested, the Board must harmonize the competing interests embodied in the statute. Employees' challenges to the calculation of agency fees, he suggested, created such conflicts.

There is no suggestion that this court is bound by the Board's determination as to its own jurisdiction. *See Miller v. Illinois Dept. of Public Aid,* 69 Ill.App.3d 477, 25 Ill.Dec. 934, 939, 387 N.E.2d 810, 815 (1979) ("statutory interpretation of the terms and legislation establishing administrative agencies and governing their operation is strictly a question of law for determination by the courts.") Nor does the court find General Counsel's reasoning persuasive. In contrast to the General Counsel's suggestion, fair share disputes do not place in conflict different policies of the labor act. The proviso quite clearly states that fair share determinations fall outside the unfair labor practices described in section 10(b)(1); it follows, given this command, that disputes over those determinations also are beyond the reach of the act. This reading of section 10(b)(1) comports with the General Counsel's own understanding of the implicit policy behind the Illinois Public Labor Relations Act: "that the Board should avoid excessive entanglement in internal union affairs, so as to preserve its neutrality for resolving disputes between unions and employers." Since the considerations which the General Counsel sees as justifying a departure from this policy—the First Amendment concerns articulated in *Hudson*—are constitutional, not statutory, there is no need to accommodate these principles by a strained interpretation of the proviso's meaning. The *Hudson* principles can be effectuated in other fora which are not barred, by law, from considering them. The court accordingly declines to follow the defendants' suggestions to dismiss the case due to the availability of the Board.

## C. Indemnification

The City defendants' third contention, that indemnification by the Union justifies dismissal, is clearly wrong. Indemnification secures a party against an anticipated loss and distributes the liability among the defendants. It does not affect the plaintiffs' ability to withstand a motion to dismiss. The inclusion of an indemnification clause in the collective bargaining agreement at issue is therefore irrelevant.

### CONCLUSION

For the foregoing reasons, the motion to dismiss is denied.

It is so ordered.