DEBORAH CONLEY vs. MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY & others.[1]

Suffolk.  February 7, 1989. — June 15, 1989.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Civil*, Summary judgment. *Labor*, Union agency fee. *Constitutional Law*, Union, Freedom of association. *Civil Rights*, Availability of remedy.

In a civil action it was inappropriate for a judge to grant a party's motion for summary judgment after a different judge had denied the motion, where reconsideration had not been requested, the issues had not been reargued, and no notice had been given that the motion was being reconsidered. [173-174]

In an action for declaratory relief and damages against the plaintiff's employer and the union that represented her collective bargaining unit, in which she contended that the defendants could not constitutionally require her to join the union as a condition of retaining her employment and that, since the parties had not implemented constitutionally mandated safeguards for protecting the rights of nonunion employees, her suspension for not joining the union violated her rights, the union was not entitled to summary judgment where there were disputed factual issues as to whether the plaintiff had objected in a timely manner to formal union membership and as to the plaintiff's intentions when she signed certain documents at the union's office. [174]

In an employee's action against her employer and the union that represented her collective bargaining unit, challenging provisions in a collective bargaining agreement which required union membership as a condition of retaining her employment, this court rejected the defendants' contention that the plaintiff's objection to union membership, namely, that the union was hostile to part-time employees, was not constitutionally protected. [175-177]

On claims by an employee against her employer and the union which represented her collective bargaining unit, alleging that the defendants' action in indefinitely suspending her for not joining the union violated 42 U.S.C. § 1985 (1982), the judge correctly denied the plaintiff's motion for summary judgment against the employer, since liability under § 1985 required proof of a conspiracy between two or more persons, and material facts regarding the union's actions remained in dispute. [177-178]

[1] Local 589, Amalgamated Transit Union, and various officials of both the Massachusetts Bay Transportation Authority and the union.

CIVIL ACTION commenced in the Superior Court Department on January 4, 1985.

Motions for summary judgment were heard by *Elbert Tuttle*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Bruce N. Cameron* of Virginia for the plaintiff.

*Douglas Taylor* of the District of Columbia (*John F. McMahon* with him) for Local 589, Amalgamated Transit Union.

*Gregory C. Flynn* (*Carol A. Buckley* with him) for Massachusetts Bay Transportation Authority.

LYNCH, J. On January 4, 1985, the plaintiff, Deborah Conley, filed a complaint for declaratory relief and damages against her employer, the Massachusetts Bay Transportation Authority (MBTA), and Local 589, Amalgamated Transit Union (union), the union which represented the collective bargaining unit of which she was a member, and against various officials of both the MBTA and the union. The complaint alleged that the defendants' actions in indefinitely suspending the plaintiff violated 42 U.S.C. §§ 1983, 1985 (1982), and G. L. c. 12, § 11I (1986 ed.), and sought declaratory and injunctive relief, back pay and damages.[2]

In November, 1986, a judge of the Superior Court denied the union's motion for summary judgment ruling that exhaustion of grievance procedures outlined in G. L. c. 161A, § 19, was not a prerequisite to an action under 42 U.S.C. § 1983, and that material facts remained in dispute. In February, 1988, the plaintiff filed a motion for summary judgment against the MBTA. The MBTA filed a cross motion for summary judgment arguing that (1) it did not have an obligation to provide its employees with an agency fee option or to ensure that the union complied with constitutional provisions governing the payment of agency service fees, and (2) the plaintiff had failed to exhaust her statutory remedies under G. L. c. 161A. The

---

[2] The complaint also sought to hold the MBTA and various officials liable for breach of contract and wrongful discharge, and to hold the union and its officials liable for intentionally interfering with the business relationship between the plaintiff and the MBTA and for breaching its duty of fair representation.

union filed a memorandum in opposition to the plaintiff's motion, asserting that material facts remained in dispute. A second judge, without making any rulings and without declaring the rights of the parties, granted the MBTA's motion, denied the plaintiff's motion, and dismissed the complaint against the union and its officials.[3] The plaintiff appealed, and we granted her application for direct appellate review. We reverse the judgment against the plaintiff and remand the case for further proceedings consistent with this opinion.

On appeal, the plaintiff challenges the entry of summary judgment against her, and argues that the defendants' actions in indefinitely suspending her violated her rights secured by both the Federal and State Constitutions. Specifically, the plaintiff argues that (1) the defendants cannot constitutionally require her to become a formal member of the union and (2) the defendants violated her constitutional rights by suspending her for not joining the union without putting in place constitutionally mandated procedures for protecting the rights of nonunion employees.[4]

From the plaintiff's deposition and the parties' affidavits, the following facts appear. In June, 1983, the plaintiff went to work for the MBTA as a part-time surface operator, a position within the collective bargaining unit represented by the union. The collective bargaining agreement required all members of the collective bargaining unit to "become and remain members of the [union]," and "[a]ny employee who fails to maintain membership in the [union] to the extent of paying regular membership dues and assessments shall not be retained in the employ of the Authority . . . ."

---

[3] There is no explanation in the record why the second judge redetermined an issue that had been heard and decided by another judge in the absence of a request by the union for rehearing or reargument, and without notice to the plaintiff that he would reconsider the issue.

[4] The plaintiff's brief does not address the dismissal of her breach of contract and wrongful discharge claims against the MBTA, and therefore these claims are considered waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975); *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Eng'rs, Inc.*, 396 Mass. 818, 821 n.4 (1986).

When the plaintiff began her employment at the MBTA, she believed that the union was hostile to part-time employees.[5] At the end of her probationary period, the union notified the plaintiff of her obligation to join the union and requested that she pay the initiation fee and dues. In response to her questions regarding that notice and the union's membership requirement, an employee of the MBTA's labor relations office directed the plaintiff to discuss the matter with the union.

The plaintiff then went to the union office and was told that she must become a member of the union. She received negative responses to her questions regarding whether, as an alternative to membership, she could pay union fees to a charity or start her own union for part-time employees.

While at the union office, the plaintiff requested a copy of the collective bargaining agreement. She was told that she "would not be allowed to even read the contract . . . unless [she] signed a union card." While at the union office the plaintiff tendered a check for $100, one-third of the initiation fee required for union membership, and signed (1) a dues deduction authorization form, (2) a voluntary deduction form for political contributions, and (3) a pledge to pay dues and abide by union rules.[6] She signed these forms only to receive a copy of the

---

[5] The plaintiff's belief was based in part on our decision in *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Auth.*, 392 Mass. 407 (1984), in which the union challenged the MBTA's right to hire part-time employees.

[6] Formal union membership requires an employee to sign a pledge obligation which states: "I, . . . , do solemnly promise and pledge (without any reservation or evasion) to support the constitution and laws of this Amalgamated Transit Union, Boston Carmen's Union, Division No. 589. I will keep myself in good standing by paying all dues, fines and assessments required. I will work to promote the best interests of this Association and encourage my fellow workers to become members of the same. I will not take the place of any member of this organization, or any other union worker who may be on strike, or locked out. I will not allow political or religious matters to interfere with my duties to this Association. I will not reveal any of the private business, to any one not entitled to know the same. I will not slander or abuse the officers or members, and will report to the authorized officers, or to the meetings of this Association, any false or slanderous stories that may be circulated to injure a member, and will not knowingly wrong a member or see one wronged if in my power to prevent it. I will

collective bargaining agreement and understood that she would not become a formal member until she paid the full initiation fee. The plaintiff never became a formal union member.

In April, 1984, the union notified the plaintiff that she was in violation of the agreement's membership requirement and that her name had been sent to the MBTA for discharge. In May she sent a letter to the union's president objecting to becoming a formal union member; to paying the same fees as union members; and to the union's use of members' dues for political and ideological activities unrelated to collective bargaining.

In June, 1984, the MBTA informed the plaintiff that, if she did not become a member of the union, she would be discharged. At an interview pursuant to MBTA procedures, the plaintiff told an MBTA supervisor that there were "a lot of reasons [why she did not] want to join the union," one of which was the inadequacy of the union's representation of part-time employees.

It is undisputed that prior to her discharge the MBTA had received a letter from the plaintiff's counsel stating that she objected to being a formal union member. It is also undisputed that the MBTA forwarded a copy of this letter and a copy of the plaintiff's prior letter to the union president, asking for the union's position regarding the plaintiff's objection to formal union membership.[7] In July, 1984, before receiving the union's

---

not appeal to any legal authority in matters pertaining to this Association until I have exhausted all means of redress provided by its laws. I will be respectful in word and action to every woman, and be considerate to the widow and orphan, the weak and defenseless, and never discriminate against a fellow worker on account of creed, color or nationality. I also promise to promote the cause of trade union principles, and defend freedom of thought whether expressed by tongue or pen with all the power at my command.

"This obligation I take upon my honor, and solemnly promise to keep the same, as long as life remains."

[7] In response to the MBTA inquiry the union maintained that the plaintiff had been properly suspended and that the MBTA should take steps to effectuate her discharge. This was based in part on the union's belief that "fair share" or "agency fee" alternatives and relevant court decisions "are not applicable in a situation in which the contract requires union membership as distinguished from an agency fee arrangement."

response, the MBTA indefinitely suspended the plaintiff. The plaintiff has yet to be discharged, but remains indefinitely suspended.

While the union president disputes that he ever received the plaintiff's letter which voiced her objections to formal union membership, the union does not dispute that it ultimately received notice of the plaintiff's objections via the MBTA inquiry. However, the union argues that this notice, which came after the plaintiff had been suspended, was too late to be effective. The union and the MBTA also argue that, since the plaintiff's deposition reveals that her only objection to becoming a member of the union was that she believed the union was hostile to part-time employees, her objection was not a constitutionally protected objection which would entitle the plaintiff to forgo formal membership and only pay a fair share or agency fee alternative.[8]

1. *Standard for summary judgment.* When presented with a motion for summary judgment, the judge must consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" to determine whether summary judgment is appropriate. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). Summary judgment is appropriate if there is no genuine issue of any material fact and the moving party is entitled to a judgment as a matter of law. *Id.* In ruling on the motion the judge should consider the evidence "with an indulgence in the [opposing party's] favor." *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Eng'rs, Inc.*, 396 Mass. 818, 822 (1986), quoting *National Ass'n of Gov't Employees, Inc.* v. *Central Broadcasting Corp.*, 379 Mass. 220, 231 (1979), cert. denied, 446 U.S. 935 (1980). Also, rule 56 allows summary judgment to be entered against the moving party in appropriate circumstances. Mass. R. Civ. P. 56 (c).

a. *Summary judgment in favor of the union.* Circumstances can exist that would warrant the granting of summary judgment

---

[8] In her deposition the plaintiff admits that she did not object to the union's ideological or political positions. Thus, the defendants argue that the plaintiff's suspension was lawful because her objection was not "ideologically" or "politically" based.

on reconsideration by one judge after summary judgment had been denied by another. See *King* v. *Globe Newspaper Co.*, 400 Mass. 705, 707-708 (1987), cert. denied, 485 U.S. 940 and 962 (1988). However, it was not appropriate in this case where reconsideration had not been requested, the issues had not been reargued and no notice had been given that the union's motion for summary judgment was being reconsidered. This is especially so where there were no rulings, and where the party benefiting from summary judgment conceded that a dispute of material fact existed.

In addition, material facts remain in dispute. The disputed matters include (1) whether the union ever received the plaintiff's May 17, 1984, letter in which she objected to joining the union, and (2) the content of the conversation that occurred at the union office. The union alleges that, during her visit to the union office, the plaintiff signed union documents because she wanted to become a union member and did not voice any objection to formal membership. At her deposition the plaintiff testified that she signed the union documents only because she understood it to be the only way to obtain a copy of the collective bargaining agreement, and also that she questioned the union official regarding alternatives to union membership. In these circumstances, where material facts are clearly in dispute and the parties' intentions are crucial to a determination of liability, summary judgment is inappropriate.[9] *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 86 (1984). On the record before us, therefore, it was error to grant summary judgment in favor of the union.

---

[9] The union argues that notice of an employee's objection after the employee has been suspended is too late to be effective. Because a factual determination in the plaintiff's favor that the union was on notice of her objection to joining the union prior to her suspension would obviate the need for a decision on the sufficiency of postsuspension notice, we decline to address the issue. We note, however, that there is some support for the position the later notice was sufficient. Cf. *Brotherhood of Ry. & S.S. Clerks, Freight Handlers, Express & Station Employees* v. *Allen*, 373 U.S. 113, 119 n.6 (1963) ("Respondents first made known their objection to the petitioners' political expenditures in their complaint filed in this action; however, this was early enough").

b. *Summary judgment in favor of the MBTA.* The MBTA does not dispute, on appeal, that it knew that the plaintiff objected to becoming a member of the union because of her belief that the union was hostile to part-time employees. Both defendants argue, however, that the plaintiff's objection is not a "political" or "ideological" objection which prohibits them from enforcing the collective bargaining agreement's membership requirement.[10] Only if this argument is correct, and no factual dispute exists as to its premise, would summary judgment for the MBTA have been proper. Neither essential underpinning existed.

It is a well-established principle that formal union membership, which necessarily includes supporting, and being associated with, a union's institutional, political, and ideological activities, cannot be required as a condition of employment. See *Abood* v. *Detroit Bd. of Educ.*, 431 U.S. 209, 233-237 (1977). See also *Chicago Teachers Union, Local No. 1* v. *Hudson*, 475 U.S. 292, 301-302 (1986); *Ellis* v. *Brotherhood of Ry., Airline & S.S. Clerks, Freight Handlers, Express & Station Employees*, 466 U.S. 435, 455 (1984). Cf. *NLRB* v. *General Motors Corp.*, 373 U.S. 734, 742-743 (1963). In a related context, this court recognized the constitutional limitations that the *Abood* case placed on employers and unions who wish to require an employee's financial support of the collective bargaining agent as a condition of employment. See *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n.*, 385 Mass. 70, 78 (1982).

---

[10] Both defendants argue that the collective bargaining agreement does not require formal union membership, because the agreement provides that only those employees who fail to maintain membership "to the extent of paying regular membership dues and assessments" may be terminated. In fact, the MBTA's brief argues that "the union security clause at issue in this case is the 'practical equivalent' of an agency shop." Such an argument, however, is contrary to the position that the defendants took below. In its memorandum in support of its motion for summary judgment, the MBTA argued that it was not obligated to provide an agency service fee to its employees. In requesting the MBTA to suspend and discharge the plaintiff, the union took a similar position, see note 7, *supra.* In any case, the meaning of the collective bargaining agreement's security clause is not before us.

In the *Abood* case, the Supreme Court delineated the scope of protection enjoyed by both public and private sector employees under the First Amendment to the United States Constitution. There, the Court stated: "It is no doubt true that a central purpose of the First Amendment ' "was to protect the free discussion of governmental affairs." ' . . . But our cases have never suggested that expression about philosophical, social, artistic, economic, literary, or ethical matters — to take a nonexhaustive list of labels — is not entitled to full First Amendment protection. Union members in both the public and private sectors may find that a variety of union activities conflict with their beliefs. . . . Nothing in the First Amendment or our cases discussing its meaning makes the question whether the adjective 'political' can properly be attached to those beliefs the critical constitutional inquiry." (Citations omitted; footnotes omitted.) *Abood*, *supra* at 231-232. Thus, considering *Abood*'s "nonexhaustive list of labels," the plaintiff's objection to the union's position towards part-time employees is sufficient to trigger her constitutionally based right not to associate with the union. The *Abood* case indicates that the plaintiff may decide for a wide variety of reasons that she does not want to associate with the union to any degree more than can be constitutionally required (i.e. paying her pro rata share of a union's over-all costs of collective bargaining, contract administration, and grievance adjustment).[11]

The argument, made by both the MBTA and the union, that the plaintiff's objection is not constitutionally protected implies

---

[11] We also note that this case does not present for our decision any of the procedural concerns raised by *Chicago Teachers Local No. 1* v. *Hudson*, 475 U.S. 292 (1986). See *Harrison* v. *Massachusetts Soc'y of Professors/ Faculty Staff Union/MTA/NEA*, *ante* 56 (1989). In the *Hudson* case, the Supreme Court held that those employees who chose not to join the union, and chose not to support a union's ideological or political activity, and yet are asked to pay their pro rata share of the costs of collective bargaining, contract administration, and grievance adjustment are entitled to procedural protections to ensure that their fees are not used by the unions for impermissible purposes. The issue presented in this case is not the sufficiency of the union's agency fee demand nor how the collected fees are used, but rather whether the plaintiff's basis for not joining the union is sufficient to entitle her to a fair share or agency service fee alternative.

that there is a discernible ideological litmus test that could be used by employers and unions to determine those individuals who have a "genuine" First Amendment opposition to associating with a particular union. In *Abood*, the Supreme Court not only recognized the broad scope of an employee's First Amendment protection, *Abood, supra* at 231-232, but also recognized that an objecting employee need only make a generalized objection because "[t]o require greater specificity would confront an individual employee with the dilemma of relinquishing either his right to withhold his support of ideological causes to which he objects or his freedom to maintain his own beliefs without public disclosure." *Id*. at 241 & n. 42. Thus, we decline to fashion a rule which would allow a union or an employer to require an objecting employee to articulate his or her ideological objection to union membership and then to determine whether the employee's objection is "ideological" or "political" enough to be constitutionally protected.

In view of these requirements, an employer cannot ignore an employee's assertion of a constitutionally protected right which is valid on its face. See *Chicago Teachers Local No. 1* v. *Hudson, supra* at 307 n. 20 ("Since the agency shop itself is 'a significant impingement on First Amendment rights,' . . . the *government and union* have a responsibility to provide procedures that minimize that impingement and that facilitate a nonunion employee's ability to protect his rights" [emphasis added; citations omitted]). See also *Tierney* v. *Toledo*, 824 F.2d 1497, 1504 (6th Cir. 1987) ("[N]o *union or employer* may take any action to enforce a non-union member's duty to pay any dues . . . until a plan with procedures meeting the commands of *Abood* and *Hudson* is established and operating" [emphasis added]). *Dixon* v. *Chicago*, 669 F. Supp. 851, 852-853 (N.D. Ill. 1987) (ruling the express language of *Hudson* an "express declaration of governmental [employer] responsibility"). In order to dispose of the issue of summary judgment in favor of the MBTA, it is not necessary or appropriate that we say more.

c. *Summary judgment in favor of the plaintiff*. The plaintiff also appeals from the denial of her motion for summary judg-

ment on liability only against the MBTA. The plaintiff's complaint alleges that the MBTA's actions violated 42 U.S.C. § 1985. However, because liability under § 1985 requires proof of a conspiracy between two or more persons, *Francis-Sobel v. University of Me.*, 597 F.2d 15, 17 (1st Cir.), cert. denied, 444 U.S. 949 (1979), and at least because material facts remain in dispute regarding the union's actions, the plaintiff is not entitled to summary judgment against the MBTA. Therefore, the judge did not err in refusing to grant summary judgment for the plaintiff.

2. *Conclusion*. Accordingly, we reverse the summary judgment entered against the plaintiff and, because material facts remain in dispute, summary judgment in her favor is inappropriate. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*