VICTORIA HICKS[1] & another[2] *vs.* BROX INDUSTRIES, INC.

No. 97-P-1143.

Middlesex. January 7, 1999. - June 9, 1999.

Present: KASS, KAPLAN, & LENK, JJ.

*Evidence,* Expert opinion. *Negligence,* Expert opinion, Engineer. *Practice, Civil,* Summary judgment.

In a negligence action, the judge correctly, on the materials submitted, including expert opinions, ordered summary judgment in favor of the defendant, where the plaintiff did not demonstrate a reasonable expectation of being able to establish that it was more probable than not that the defendant's actions contributed causally to the accident in which the plaintiff was injured. [107-108]

CIVIL ACTION commenced in the Superior Court Department on June 22, 1994.

The case was heard by *James F. McHugh, III,* J., on a motion for summary judgment.

*John J. McGivney (Kevin P. Geaney* with him) for the plaintiffs.

*Nelson G. Apjohn (Susan J. Irwin* with him) for the defendant.

KAPLAN, J. The question in this negligence case is on the validity or reliability of an expert opinion in the engineering field offered on the part of the plaintiff. We write briefly to confirm that, obedient to the rule of *Commonwealth* v. *Vao Sok,* 425 Mass. 787, 796-798 (1997), we have reviewed de novo the methods employed by the expert, and, reaching the same conclusion as the judge below and for similar reasons, we reject the expert's opinion and affirm the summary judgment entered in favor of the defendant.

On August 19, 1993, at dusk, the plaintiff Victoria Hicks was

[1] By Israel Hicks, her father, as guardian and next friend.

[2] Israel Hicks, individually.

driving her car in a northbound lane of Interstate 495 in the neighborhood of Lawrence. At the same time, Richard S. Morse was in a southbound lane, driving a 1989 Ford F-250 pickup truck towing a tandem axle trailer that carried a stock car. The trailer broke free of the truck, crossed two southbound lanes and a median strip, and crashed into Ms. Hicks's car. The injuries to Ms. Hicks were severe; she has been left in a vegetative condition.

On June 22, 1994, Israel Hicks for his daughter Victoria commenced the present action alleging negligence resulting in personal injuries and property damage.[3] Named as defendants were Morse, truck operator; W.B. Chisholm Corporation, truck owner; and Kevin T. Fletcher, trailer owner.

Morse was deposed in pretrial discovery on November 21, 1994. Morse stated that just before the accident, while traveling south on Interstate 495 at a speed of 50-55 m.p.h., he heard and felt the truck make a "horrendous bang." He attributed this to the truck's striking, straight on, a five-inch lip or height differential where the road surface changed from "ground down" to "normal pavement." The bang or bump, according to Morse, came about one-half mile before the events of the accident which occurred just after the truck passed the exit for Route 114. Morse's testimony would place the bump at about the Massachusetts Avenue bridge deck, which had been cold planed (a grinding process) to remove the existing pavement, and was then awaiting repaving, and it could be surmised that the five-inch difference[4] had not been alleviated by a ramp or an adequate ramp from the planed surface to a steel expansion joint in the bridge deck.

Not unexpectedly in the light of Morse's testimony, the plaintiff Hicks amended his complaint on April 7, 1995, to add as a defendant Brox Industries, Inc. (Brox), the contractor responsible for the repaving project. (Also added were Bardon Trimount, Inc., subcontractor; John G. Shea, Jr., trailer maker; and the Commonwealth of Massachusetts.)[5] One could speculate that the bump, supposedly occasioned by Brox's negligence,

---

[3]Israel Hicks claimed also in his own behalf for breach of his consortium interest.

[4]The five-inch estimate would exceed substantially the margin ordinarily expected from this cold planing, say three-quarters of an inch or one inch.

[5]It is understood that all claims in the action have been resolved except the claim against Brox.

had broken or severed the hitch connecting the trailer to the truck, and the trailer was thus released to collide with the northbound traffic. Relevant circumstances were these. Brox had undertaken to repave some 5.5 miles of Interstate 495, which included the southbound side of the Massachusetts Avenue bridge. The southern end of the project was about 1,200 feet south of that bridge (at about the Shawsheen River bridge). The uncoupling of the trailer is taken by Morse's testimony to have happened some 3,200 feet south of, and about forty seconds of travel time distant from, the Massachusetts Avenue bridge.[6]

The judge held, we think correctly, that the question whether Brox was negligent in respect to the lip was the kind of question a jury could decide intelligently without the aid of experts. For summary judgment purposes, therefore, negligence on Brox's part (including the feature of the five-inch difference) was to be assumed. An unaided jury could also qualify to decide whether a bump could cause the immediate uncoupling of a load or weight like that of the trailer plus stock car. But, on the question of a link — a causal relation — between the bump and an uncoupling at a distance as above mentioned, a jury could make no sensible progress without expert advice.

The plaintiff offered Edward D. Petrow, a mechanical engineer, as his expert. Petrow, deposed on November 3, 1995, assented, under examination by defendant's counsel, that "[i]n terms of probabilities, you believe any discontinuity that would be a factor in this case occurred within a hundred feet to ten feet before the separation of the trailer and the truck . . . ?" Answer: "That's what I would judge to be most probable." While a one mile distance from the bump "would be approaching the threshold of what I think is reasonable" in considering any influence on a separation, ten to one hundred feet was "the most probable range" in effecting the separation.[7] If the discontinuity (bump) preceded by ten to one hundred feet the separation of the trailer from the truck, a point fixed at 3,200

---

[6]These estimated distances were used by the plaintiff and the judge. The defendant suggests that the southern end of the project (at about the Shawsheen River bridge) was 1,310 feet south of the Massachusetts Avenue bridge; the Route 114 bridge 2,890 feet south of the southern end of the project; and the accident scene 3,430 feet south of that point. In the end the discordances in the estimates do not much matter.

[7]Petrow testified at some length about the hitch connecting the trailer. He thought it defective and indicated the separation would not have happened if

feet south of the Massachusetts Avenue bridge, then it would follow that Brox was free of liability, for the project ended at the Shawsheen River bridge, 2,000 feet north of the separation.

The defendant Brox moved for summary judgment on December 22, 1995, basing itself in part on Petrow's deposition.[8]

Petrow swore an affidavit in opposition on January 13, 1996. Now, he said, with an opportunity to read the depositions in the case, he was prepared to state that "the distance between any causal surface discontinuity and the separation point of the truck and trailer ranges between ten feet and one mile" — this in marked contrast to his own deposition testimony that "the most probable range" was ten to one hundred feet. As to the causation issue, the affidavit "anticipated" that the affiant's opinion would be "supported by scientific method" and "will be further supported by mathematical calculations and modeling" which would "show exactly how the subject hitch components were caused to separate by the road conditions on I-495 within the boundaries of the construction project." This appeal to scientific method in the abstract, with a promise of future vindication (incidentally attempting to shift away from the bump on the Massachusetts Avenue bridge), would not do, and left the record in a condition requiring summary judgment for the defendant. The judge characterized Petrow's opinion, correctly, as amounting to "inadmissible conjecture" and allowed the summary judgment, with a cogent memorandum of decision, on March 21, 1996.[9]

On March 28, 1996, the plaintiff moved for leave to file a supplemental affidavit dated March 27, 1996 (revised March 29, 1996), and for reconsideration of the order of March 21, 1996. In our view, the judge would have been justified in denying out of hand the motion to file, where the plaintiff had made no case and could not and did not complain of lack of time to make it

---

the hitch had been properly manufactured, designed, and used. However, he also thought the hitch was secure up to the time of the bump.

[8]It is not doubted that the defendant's submission on the motion for summary judgment sufficed as a predicate calling upon the plaintiff, with the burden of proof, to show some reasonable expectation of being able to establish that it was more probable than not that the defendant's actions contributed causally to the accident. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

[9]As to attempts to solder deposition testimony by later offered affidavits, compare *Morrell* v. *Precise Engr., Inc.*, 36 Mass. App. Ct. 935, 937 (1994).

before judgment entered.[10] However, while expressing reluctance to receive the supplemental affidavit, the judge did so out of sympathy for the victim if not for the expert.

In his late affidavit the expert concluded that the causal discontinuity probably occurred at the Shawsheen River bridge location. This would conveniently place Brox's supposed fault within, although at the tail end of, the repaving project, while narrowing somewhat the supposed distance between the discontinuity and the separation. For the purpose, the expert boldly transferred the five-inch discontinuity from the Massachusetts Avenue bridge to the Shawsheen River bridge. At the same time the expert, out of some unavoidable regard to the fact that Morse's testimony implicated the Massachusetts Avenue bridge deck, offered, as a *lesser* probability, that the bang of discontinuity occurred there.

These results were arrived at by methods of the vaguest description using ill described computer models that used input variables several of which were "unknown."[11] As the judge remarked in his second memorandum of decision, "[t]he origin, source, prior use, testing, general acceptance and foundation of and for the models is not even footnoted in Mr. Petrow's affidavit." The affidavit did not improve the plaintiff's feckless situation on the merits. Accordingly, carrying out a "gatekeeper" role, see *Commonwealth* v. *Lanigan*, 419 Mass. 15, 24, 26 (1994); *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), and following the rule of the *Vao Sok* case, *supra*, we hold the expert's opinion as last expressed[12] was invalid and unreliable. The judge properly declined upon reconsideration to change the order allowing summary judgment.

We take note, finally, of a contention by the plaintiff that *Lanigan/Daubert* should not apply to opinions of an engineer-

[10]The expert had been retained by the plaintiff by September 8, 1994, his testimony was given on November 3, 1995, and the close of discovery was set for December 31, 1995. The plaintiff had not applied for further time under Mass.R.Civ.P. 56(f), 365 Mass. 825 (1974).

[11]Curiously, the expert now relied on data in a deposition by a defense witness that he had previously scorned as invalid.

[12]The plaintiff tendered a further affidavit by the expert dated July 12, 1996, commenting on a videotape recently discovered by the defendant and disclosed to the plaintiff. The expert suggested that the tape supported his opinion about the occurrence of the discontinuity at the Shawsheen River bridge, but we think the case was unchanged.

ing type, in which practical experience plays a part, as contrasted with opinions that are strictly scientific. For this proposition the plaintiff cited *Compton* v. *Subaru of America, Inc.*, 82 F.3d 1513 (10th Cir.), cert. denied, 519 U.S. 1042 (1996). It is not clear how the plaintiff would be advantaged in the end if such a distinction were taken, but in any event the attempted distinction was recently discredited in *Kumho Tire Co., Ltd.* v. *Carmichael*, 526 U.S. 137 (1999).

*Judgment affirmed.*