Sikora, J.
RULINGS
Upon consideration of the voluminous and vigorously argued written and oral presentations of the movant defendant Intertek Testing Services, NA, Inc. (a/k/a ETL Testing Labs, Inc.) (“Intertek”), and of the plaintiff Gormans (the “Gormans”), the court DENIES Intertek’s motion for summary judgment.
REASONING
1.In the assessment of a summary judgment motion, the court examines the factual materials and their reasonable inferences in the light most favorable to the opposing party. Carrellas v. Viveiros, 410 Mass. 314, 316-17 (1991); Conley v. MBTA, 405 Mass. 168, 173 (1989); Kelley v. Rossi, 395 Mass. 659, 661 (1985). A traditional view has been that a “toehold is enough to survive a motion for summary judgment.” Marr Equipment Corp. v. I.T.O. Corp. of New England, 14 Mass.App.Ct. 23 further app. rev. denied, 387 Mass. 1103 (1982).
2. Summary judgment is generally disfavored for disposition of negligence claims because the issue of negligence typically reduces to one of fact and one of reasonable judgment or behavior amid specific circumstances, and because the law deems a jury the most reliable arbiter of reasonableness. Appleby v. Daily Hampshire Gazette, 395 Mass. 32, 37 (1985); Roderick v. Brandy Hill Co., 36 Mass.App.Ct. 948, 949 (1994); Foley v. Matulewicz, 17 Mass.App.Ct. 1004, 1005 (1984).
3. However, even in negligence claims, the resisting party will incur summary judgment if pretrial discovery shows no information or potential evidence to support the claim, Kourouvacilis v. General Motors Corporation, 410 Mass. 706, 711 (1991); or if the claimant shows no more than a “mere scintilla” of supporting evidence, Anderson v. Liberty Lobby Inc., 477 U.S. 242, 252 (1986).
4. Intertek grounds its motion for summary judgment against the Gormans’ negligence claim upon the alleged inadequacy of the expected testimony of their expert witness, Dr. Igor Paul. Intertek challenges multiple points of his qualifications and methodology as weaknesses or deficiencies accumulating to a degree of unreliability requiring the exclusion of his testimony under the standards of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589-593 (1993), and Kumho Tire Company Ltd. v. Carmichael, 119 S.Ct. 1167 (1999), and of convergent Massachusetts decisions such as Commonwealth v. Lanigan, 419 Mass. 15, 25-7 (1994), and Hicks v. Brox Industries, Inc., 47 Mass.App.Ct. 103, 107-8 (1999) [Intertek Law Memo at 2-4; 5-9; 10-15].
5. Several considerations weigh against the allowance of summary judgment upon the claim of negligent product evaluation in these circumstances.
(a) Most of the decisions cited by the combatants address the evidence at trial, its admissibility or exclusion. Only Hicks, supra, discusses a ruling of summary judgment in which the motion or trial judge categorically preempts the entire appearance of the expert at trial. The precedents lead me to believe that the trial courts prefer to address the reliability of proposed expert testimony by intratrial rulings rather than by pretrial summary judgment.
(b) The weaknesses attributed to Dr. Paul’s expected testimony appear to relate often to weight rather than to admissibility, or appear to present arguable discretionary determinations upon that dichotomy for the trial judge.
(i) While Intertek doubts Dr. Paul’s specific qualifications to opine upon the design of the treadmill product at issue (Law Memo at 5-9), the Gormans cite his general competence, his specific inspection of the disputed treadmill here, some prior analytical work *622 with treadmill products in his MIT teaching, and his generic familiarity with product testing standards and processes and with product safety alternatives and feasibility (Law Memo at 22-7; 32-40).
(ii) As to Dr. Paul’s methodology (as contrasted with his qualifications), Intertek argues that certain portions of his deposition testimony demonstrate a predetermined opinion or assumption of negligence in search of a supporting rationale (Law Memo at 10-15). The Gormans contend that his examination of the treadmill and his knowledge of specific alternate safety factors embody a sound methodology for a resulting opinion (Law Memo at 32-5).
(iii) In light of the closest fitting precedents, Matushita Electric Corp. of America v. Sonus Corp., 362 Mass. 246, 265 (1972), McLaughlin v. Board of Selectmen of Amherst, 422 Mass. 359, 361-63 (1996), and Power Service Supply, Inc. v. E.W Wiggins Airways, Inc., 9 Mass.App.Ct. 122, 130 (1980), these issues belong to the trial judge as questions of evidence and not to the motion judge as a question of summary judgment upon the theory of negligence.
(c) An additional, important, practical dimension is present. If Intertek’s view of the weakness of Dr. Paul’s expertise proves correct, it has multiple procedural remedies still available. Naturally at trial it will conduct cross-examination and introduce countervailing expert evidence. It will be able to submit a motion for directed verdict and for judgment notwithstanding the verdict. The latter procedure, especially, enables the trial judge to rule with the maximum amount of evidence and judgment.
6. Intertek moves also for summary judgment against the Gormans’ claims under G.L.c. 93A, §§2 and 9, upon the ground that statutory liability requires a “business relationship” of a contractual or consumer nature between the injured claimant and the 93A defendant. That proposition of law appears doubtful under the main precedent of Maillet v. ATF-Davidson Co., 407 Mass. 185, 190-92 (1990) (actionable “unfair” conduct may exist between a non-privity plaintiff and a manufacturer in a product liability case). For summary judgment both the material facts and the governing law must be settled in favor of the moving party. See Pederson v. Time, Inc., 404 Mass. 14, 16-7 (1989), and J. Smith & H. Zobel Massachusetts Rules Practice, §56.7, second paragraph and §56.8, first paragraph (1977 & 1997 supp.).
CONCLUSION
For these reasons the court DENIES the motion for summary judgment submitted by the defendant Inter-tek.