Fecteau, J.
This case arises out of an action by Micheál Gleason (“the plaintiff’), individually and d/b/a That Place in Bolton (the “Restaurant”) against the Town of Bolton (“the defendant”) for negligence (Count I); trespass (Count II); nuisance (Count III); strict liability (Count IV); and G.L.c. 21E, §15 (Count V). The Plaintiff operated the Restaurant from 1995 to 1999, during which, methyl tert-butyl ether (“MTBE”) was present in low levels in the water supply to the Restaurant. The plaintiff alleges that the defendant is responsible for the MTBE and that the presence of MTBE in the water caused the Restaurant to fail. The plaintiff also claims damages for personal injury to his back arising out of his lifting the bottled water provided to him by the defendant. The defendant now moves for summary judgment on all Counts. For the following reasons the defendant’s motion for summary judgment is ALLOWED.

BACKGROUND

The summary judgment record indicates the following facts, considered in the light most favorable to the plaintiff as the nonmoving party.
The defendant’s Highway Department is located at 12 Forbush Mill Road in Bolton (hereinafter known as the “Town Barn”). To the north of the Town Barn is property owned by Michael Katsis (the “Katsis Prop- , erty”). On the Katsis Property are two structures; a four-unit apartment building and a small building on Route 117 (“Main Street”). Both buildings are supplied with water from a well located on the Katsis Property. *679 Between approximately March 1995 and May 1999, the plaintiff rented the small building from Michael Katsis and ran his restaurant called “That Place in Bolton” from the building.
In May 1994, prior to the plaintiff commencing operation of the Restaurant, the defendant learned that there had been a release of gasoline from its underground storage tanks (“USTs”) located on the Town Barn properly. The USTs were present on the Town Barn property since approximately 1988. When the release of gasoline was discovered, the defendant responded to the problem in accordance with the requirements of G.L.c. 2 IE and the Department of Environmental Protection’s (“DEP”) regulations governing the clean-up of contaminated sites.
The defendant responded by removing the USTs; hiring a Licensed Site Professional (“LSP”) to oversee implementation of necessary and appropriate response actions as required by the DEP; excavating contaminated soil; installing a “pump and treat” system with air sparging; installing a carbon filtration treatment system; installing monitoring wells; and testing ground water in the area near the Town Barn. Additionally, in 1998, a treatment system was installed and connected to the water supply well on the Katsis Property to remove petroleum-related contaminants potentially present in the ground water and that impacted that well.
The defendant completed all response actions required by G.L.c. 21E and DEP regulations by 1999. The LSP hired by the defendant tested the public water supply well on a monthly basis to detect the presence of a variety of gasoline related chemicals, including benzene, toluene, ethylbenzene, xylenes, and MTBE. The LSP provided the Board of Health for the Town of Bolton with the monthly testing data of the public water supply well for its review. The Board of Health reviewed the testing data pursuant to its statutory obligation under G.L.c. Ill, §122, and relied upon and was guided by the regulations, standards and guidelines developed by the DEP under its Drinking Water Program, to determine whether a potential nuisance or health risk existed at the Restaurant.
"Public water systems” like the one serving the Restaurant are subject to standards and guidelines governing water quality under the DEP’s Drinking Water Program. The standards and guidelines were established by the DEP in accordance with the requirements of G.L.c. 111, §160 and the Federal Safe Drinking Water Act, 42 U.S.C. §§300f et seq., and are known as “maximum contaminant levels” (“MCLs”). The United States Environmental Protection Agency (“EPA”) and the DEP establish MCLs for various chemicals that may appear in public drinking water supplies. The MCLs are used to establish stringent “safe” standards for drinking water supplies. Where the contaminants found in drinking water supplies are below the MCLs, the water supplies are considered safe for all purposes, including drinking.
The maximum contaminant level for MTBE is 70 ug/L. During the time period the plaintiff operated the restaurant, MTBE was found in the water supply well at levels that ranged from undetectable to 32 ug/L. In 1998, when the monthly testing results indicated a higher MTBE level than ever previously observed, the defendant provided bottled water and bagged ice to the Restaurant at no cost to the plaintiff. In September 1998, the defendant installed a water treatment system in the water supply well serving the Restaurant.
In May 1999, the plaintiff ceased operating the Restaurant. At no time during the plaintiffs operation of the restaurant between 1995 and 1999 did the MTBE levels exceed the MCL. As such, at no time during the plaintiffs operation of the Restaurant was the water supply serving the Restaurant unsafe for drinking or any other purposes.

DISCUSSION

I. Standard of Review

Summary judgment shall be granted where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Conley v. Massachusetts Bay Transp. Auth., 405 Mass. 168, 173 (1989). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Summary judgment is appropriate where the moving party demonstrates that the nonmoving party would be unable to prove an essential element of its case, and that proof of that element is unlikely to be forthcoming at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). To overcome a summary judgment motion, the nonmoving party must articulate specific facts establishing the existence of genuine issues of material fact. Pederson, supra, at 17. Bare assertions or conclusions regarding an individual’s understandings and assumptions are insufficient to withstand a well-pleaded motion for summary judgment. Polaroid Corp. v. Rollins Envtl. Servs., 416 Mass. 684, 696 (1993).

II. Counts I-IV: Negligence, Trespass, Nuisance, and Strict Liability

Plaintiff alleges he is entitled to recover under the theories of negligence, trespass, nuisance, and strict liability. Evidence of personal injury or property damage is required for recovery in a negligence claim. Cannon v. Sears, Roebuck & Co., 374 Mass. 739, 742 (1978). “A trespass . . . requires an unprivileged, intentional intrusion on land in the possession of another.” Wellesley Hills Realty Trust v. Mobil Oil Corp., *680 747 F.Sup. 93, 99 (D.Mass. 1990), citing New England Box Co. v. C&R Const. Co., 313 Mass. 696, 707 (1943). Additionally, there is no liability for private nuisance in the absence of injury to the property of another. Asiala v. City of Fitchburg, 24 Mass.App.Ct. 13, 16-17 (1987). In order to recover in strict liability for an ultra-hazardous or abnormally dangerous activity, the plaintiffs must demonstrate injury or harm resulting from the activity. Clark-Aiken Co. v. Cromwell-Wright Co, Inc., 367 Mass. 70, 89 (1975). Finally, plaintiffs are not entitled to recover for purely economic losses, in the absence of physical damage to the property. Garweth v. Boston Edison Co., 415 Mass. 303, 305-08 (1993); Guaranty-First Trust Co. v. Textron, 416 Mass. 332, 335-38 (1993).
The defendant concedes that MTBE was present in the water supply well that served the Restaurant during the time that the plaintiff operated the Restaurant. However, there is no evidence of physical harm to the plaintiffs property or of personal injury. When the defendant discovered the problem with the USTs on its property, prior to the plaintiff occupying and operating the Restaurant, it took the required remedial actions and continually monitored the water supply well that served the Restaurant for any indication of a continuing problem. The levels of MTBE detected in the water supply well never exceeded the MCL. When the monthly data records showed MTBE levels higher than previously recorded, but which was still well below the MCL, the defendant supplied the Restaurant with bottled water and bagged ice as a precautionary matter, at no cost to the plaintiff. Moreover, the defendant installed a water treatment facility to remove any potential MTBE from the water supply well prior to the plaintiff ceasing his operation in May 1999.
The plaintiff relies, in part, upon the unpublished decision of the Appeals Court in Scavone v. Massachusetts Turnpike Authority, et al, 44 Mass.App.Ct. 1103 (1997), to support his position. In Scavone, the defendant’s motion for summary judgment was denied on appeal because the court found that the plaintiffs property could not be sold due to the contamination, and plaintiffs testimony indicated that he had detected an oily residue on his clothing after they had been laundered, thereby establishing a genuine issue of material fact as to whether the plaintiffs property had been contaminated. In contrast to Scavone, in this case, the question of contamination is not at issue. Rather, the issue is whether the plaintiff suffered any damage as a result of the contamination.
Consequently, the plaintiff has not suffered any compensable injury to his property or person[2] because of the presence of MTBE in the water supply well that served the Restaurant. Accordingly, the defendant is entitled to summary judgment as a matter of law on Counts I through IV, because the plaintiff cannot prove any personal or property damage as a result of the presence of MTBE in the water supply well.

III. G.L.c. 21E, Massachusetts Oil and Hazardous Material Release Prevention Act

The plaintiff further alleges that he is entitled to recover under G.L.c. 21E, §15, of the Massachusetts Oil and Hazardous Material Release Prevention Act (the “Act”). G.L.c. 21E, §15 states, “[i]n any suit by Massachusetts residents to enforce the requirements of this chapter, or to abate a hazard related to oil or hazardous materials in the environment, the court may award costs, including reasonable attorney and expert witness fees, to any party other than the commonwealth who advances the purposes of this chapter.” To recover under Section 15, the plaintiff must first establish a compensable loss under Section 5 of the Act. See Black v. Costal Oil New England, Inc., 45 Mass.App.Ct. 461, 467 (1998). Section 5(a)(2)(iii) allows plaintiffs to hold owners or operators of sites where hazardous waste is stored or disposed of, liable for “damage to his real or personal property incurred or suffered as a result of such release or threat of release.” G.L.c. 21E, §5(a)(2)(iii).
Recovery under the aforementioned provisions of the Act is contingent upon a showing of property damage or personal injury as a result of contamination from the release of hazardous substances. The plaintiff alleges that as a result of the contamination of the water supply well he was forced to close his restaurant. However, he does not identify any of his property that was physically altered, impacted or damaged by the low-level contaminants found in the water supply to the Restaurant. Thus, the plaintiffs claim amounts to nothing more than a claim for economic loss, and in the absence of damage to the property or personal injury, there can be no recovery for economic loss. Garweth v. Boston Edison Co., supra at 307-08.

ORDER

For the foregoing reasons it is hereby ORDERED that defendant’s motion for summary judgment be ALLOWED.

 Plaintiff alleges that he injured his back while moving the bottled water in the Restaurant. As the causal nexus between the alleged injury and the presence of MTBE in the water supply well is tenuous at best, this Court will dispense with any further discussion of plaintiffs back injury. See Cannon v. Sears, Roebuck & Co., 374 Mass. 739, 742 (1978) (“A cause of action based on negligence requires that both negligence and harm be shown, with a causal connection between these two elements").