SAMUEL C. LUBARR, PLAINTIFF-RESPONDENT, v. ROYAL
WOODWORK, INC., DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 18, 1961—Decided October 20, 1961.

2

Before Judges GAULKIN, KILKENNY and HERBERT.

*Mr. Abraham Greenberg* argued the cause for appellant.

*Mr. Frank W. Thatcher* argued the cause for respondent (*Mr. Joseph R. Moss,* attorney).

The opinion of the court was delivered by

KILKENNY, J. A. D.   In this suit to recover a balance due for goods sold and delivered, the Superior Court, Law Division, sitting without a jury, rendered a judgment in plaintiff's favor for $15,929.35, and defendant appeals.

Plaintiff's complaint alleged that between January 2, 1958 and April 25, 1958 he sold and delivered merchandise to the

defendant, having a value of $16,853.53; that between June 11, 1958 and October 6, 1958 defendant paid on account of said goods the sum of $924.18, leaving an unpaid balance of $15,929.35; and that the defendant failed and refused to pay this balance.

Defendant, a Pennsylvania corporation, filed a formal appearance, the action having been initiated by a writ of attachment. By its answer defendant admitted that between January 2, 1958 and April 25, 1958 "it made certain purchases from the plaintiff," but left plaintiff to his proof of the amount thereof. It also admitted "making payment on account of purchases," without denying the figure of $924.18 in the complaint. The answer then denied "being indebted to the plaintiff in the amount claimed." The implication of the answer was, "I owe you some money for goods purchased from you, but not as much as you say." No affirmative defenses were pleaded.

The pretrial order set forth plaintiff's factual contention as follows:

"Between the dates of Sept 1957, and April, 1958, the plf sold to the deft goods and merchandise having a value of $16,853.53. The deft has paid the sum of $924.18 leaving a balance of $15,929.35, due and owing for the goods purchased by the deft, which amount the deft has failed and refused to pay."

These allegations were substantially the same as those in the complaint, except that the beginning date of the transactions was shifted backward from January 2, 1958 to September 1957. There was no formal order of amendment. Defendant's factual contention as to nonliability, as phrased in the pretrial order, was simply and solely:

"Deft while conceding that it has had contractual relations with plf, denies being indebted to plf at this time."

Unlike the implication of some indebtedness found in the answer, the inference from defendant's contention in the pretrial order was that it owed plaintiff nothing at the time

thereof.   There were no admissions in the pretrial order. The legal issues to be determined at trial were expressed as:  "Contract and damages."

The pretrial order was far from illuminating and was plainly inadequate.   One would be obliged to guess what the defense really was.   There were no depositions, no formal demands for admissions, and no inspection of either party's books and records.  Plaintiff served two sets of interrogatories, which were answered under oath by defendant's president, Jacob Herman.   In answer to the first set he swore on November 6, 1959 that no sales had been made from plaintiff to defendant between January 2, 1958 and April 25, 1958; that no amounts had been paid on account thereof; and that nothing was due and owing on account of any such sales.

In answering the second set, Herman swore on February 29, 1960, and reswore on March 9, 1960, that defendant had no record of any purchase orders given to plaintiff between September of 1957 and April of 1958, stating:

"When such purchase orders have been fulfilled, defendant's copies are disposed of.   Plaintiff should have such orders as he filled, or invoices to cover."

Using that answer as a reason or excuse, defendant avoided answers requested as to the number of purchase orders submitted, the quantity of materials requested, the price of the materials ordered, whether any or all of the purchase orders were filled, the dates of delivery, quantity and price of materials delivered, whether or not these deliveries were ever invoiced from plaintiff to defendant, the date and number of the invoices together with the invoice price.   He answered three further interrogatories, stating that defendant had made payments to plaintiff and specified a number of payments, but stated that "such payments cannot be related to the purchase orders contemplated by plaintiff under interrogatory number 1 above."   In an *addendum,* Herman inferred as a defense that the materials were of inferior

quality and not in accordance with specifications, and that plaintiff had agreed to sell "at a price lower than defendant had theretofore been paying." No such possible defenses appeared in the answer or pretrial order.

With the pleadings, pretrial order and pretrial discovery proceedings in that posture, the case was tried before Judge Wick, without a jury. Judge Wick had not conducted the pretrial conference.

The trial transcript demonstrates without dispute that the defendant ordered the merchandise in question. Plaintiff had received from the defendant two written purchase orders, each dated October 10, 1957, numbered 00051 and 00052, and three additional telephone or verbal orders. There is no issue in the case as to the delivery and receipt of the merchandise covered by the three verbal orders. Mr. Jacob Herman, president and treasurer of defendant, admitted in his testimony that the three verbal orders had been filled and that defendant's records show plaintiff's three invoices for these materials. The numbers, dates and amounts of these three invoices are: No. 6035, January 2, 1958, $1,782.50; No. 6034, January 2, 1958, $1,486.24; and No. 6040, January 15, 1958, $1,237.20.

Plaintiff testified that the materials requested in purchase order No. 00051 were those reflected in plaintiff's two invoices, No. 6050, dated January 28, 1958 for $5,281.07, and No. 6055, dated February 12, 1958 in the amount of $1,693.56. The materials requested in purchase order No. 00052 were those shown in plaintiff's invoice No. 6072 dated April 25, 1958 in the sum of $5,372.96. Mr. Herman admitted in his testimony that defendant's books show invoice No. 6050, indicating that the materials represented thereby were delivered to the defendant. He claimed, however, that defendant's two invoices, No. 6055 and No. 6072, were not listed in defendant's records, and denied delivery of the materials referred to therein.

Thus, the issue narrowed at the trial to the matter of proving delivery to defendant of the materials listed in

plaintiff's two invoices No. 6055 and 6072. Proof of such delivery was essential to plaintiff's cause of action. *Jaehnig & Peoples, Inc. v. Fried,* 83 *N. J. L.* 361 *(Sup. Ct.* 1912).

As proof of delivery, plaintiff produced copies of several delivery receipts as they appeared in the records of Jones Motor Company, Inc. of Spring City, Pennsylvania, the public carrier which had been engaged to make the deliveries to the defendant. These delivery receipts, in a standard form, set forth the name and address of the defendant as consignee, the shipper's name and port of entry, a specified number of bales of plywood, the name of the steamship, the date of delivery to the consignee, and a signature by or on behalf of the consignee below a recital that the goods had been "received in good order." They had been variously signed,—some simply "Royal Woodwork, Inc."; others, with the corporate name and the name of an individual; and one with the name of an individual only. Plaintiff identified the materials in these delivery receipts, imported plywood, as those referred to in the two disputed invoices.

The original delivery receipts were no longer available, having been destroyed by the carrier. However, Jones Motor Company, Inc. had microfilmed the originals before their destruction. The copies offered in evidence had been typed from the microfilms, the typist using a viewer. The handwritten date of delivery and signature of the consignee had been filled in on the typed copies by the typist. James R. Gallagher, employed by Jones Motor Company, Inc. as claim agent, testified that he had control of the delivery records, and that when a driver returns a delivery slip after making his delivery, the slip is processed through the accounting department, billing department, and then microfilmed. He verified that the 1958 original records had been destroyed after the lapse of time required by I. C. C. regulations. The copies of the delivery receipts produced at the trial had been made under his supervision from the microfilmed records in his office. He had personally compared these copies with

the microfilm prior to coming to court and swore that they were true, "certified" copies.

Plaintiff offered the copies of the delivery receipts and they were received in evidence over defendant's objection. In its brief, defendant stated the question involved on appeal as follows:

"The *sole issue* to be determined upon the appeal is the propriety of admission of 'certified copies' of the records of a public carrier taken from its microfilm records by someone not produced as a witness and who, therefore, was not subject to cross-examination as to the completeness and authenticity of the information shown thereon." (Emphasis supplied)

The copies were properly admitted into evidence, even though the typist who did the manual labor of typing the copies from the microfilm and writing in the delivery dates and signatures on the typed copies was not produced as a witness. If there were any need of cross-examination to establish that the copies were true and complete, Mr. Gallagher could have been cross-examined, as in fact he was. The typing had been done at his direction and under his supervision. He had personally verified the correctness of the typewritten reproductions by comparing them with the microfilm records in his office and under his control. Thus, the copies were properly admissible as secondary evidence. The absence of the originals had been satisfactorily explained and the correctness of the contents of the copies had been adequately established.

██ Such a microfilm reproduction, when satisfactorily identified, is as admissible in evidence as the original itself, whether the original is in existence or not. An enlargement or facsimile of such reproduction is likewise admissible in evidence if the original reproduction is in existence and available for inspection under direction of the court. *N. J. S.* 2A:82–38. This statute sanctions the business practice of destroying original records upon their being microfilmed to economize on filing space. We need not decide here whether

the typed copies constituted "an enlargement or facsimile" of the microfilm reproduction, so as to justify admissibility under *N. J. S.* 2*A*:82–38. We find propriety of admission on the broader rule of evidence that when nonproduction of the original is accounted for, secondary evidence may be received to prove the contents of the original. Satisfactory secondary evidence was produced and properly received in this case. The originals would have been admissible as entries or records made in the usual course of business. *N. J. S.* 2*A*:82–35.

▮ Since the matter was submitted on the above sole issue, with a very attenuated record, we gave the parties the opportunity to file supplemental briefs as to the adequacy of the proofs. These briefs have been furnished. We have examined them and the complete trial transcript. The trial judge, with his better opportunity to appraise the credibility of the witnesses, concluded:

> "Believing that these delivery slips are truthful, there is no question in my mind but what the items covered in the two invoices were received by the defendant.
> To me, these delivery slips are the pertinent evidence which persuaded the Court that such deliveries were made."

The record amply supports that conclusion.

The defendant having stated in the pretrial order, inconsistently with its answer, that it owed nothing, admitted through its president at the trial that its books reflected an indebtedness of $7,612.15. This same Mr. Herman swore in answers to interrogatories that there were no sales during the specified periods, and yet admitted under oath at the trial that certain sales did take place during that time. He swore and reswore in other answers that defendant had no record of any purchase orders given to plaintiff between September 1957 and April 1958, because "when such purchase orders *have been fulfilled,* defendant's copies are disposed of." Herman, defendant's sole witness, did not, and could not contradict defendant's written purchase orders

of October 10, 1957, numbered 00051 and 00052, swore that defendant had no copies thereof, and yet claimed the company records did not reveal the fulfillment of part of order number 00051, or any of order number 00052. Such testimonial inconsistency is apparent. Without elaborating upon further details, the trial judge was justified in regarding the delivery receipts, entries made in the regular course of business, as more trustworthy than the equivocal and contradictory testimony of defendant's president.

The judgment is affirmed.