Polaroid Corporation & another[1] vs. Rollins
Environmental Services (NJ), Inc.[2]

Middlesex. September 8, 1993. - December 29, 1993.

Present: Liacos, C.J., Wilkins, Abrams, Lynch, & Greaney, JJ.

*Comprehensive Environmental Response Compensation and Liability Act.*
*Contract,* Construction of contract, Indemnity, Offer and acceptance.
*Evidence,* Best and secondary, Existence of document. *Indemnity. Hazardous Waste. Practice, Civil,* Summary judgment.

In an action for declaratory relief, seeking a ruling under the applicable law of New Jersey that the defendant waste disposal company was obligated to indemnify certain of its customers for costs associated with a hazardous waste cleanup performed pursuant to the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9001 et seq., the plaintiff met its burden of producing copies of the contractual indemnity clause it sought to enforce [689-690]; moreover, the defendant, by complying with the terms of the contract without objecting to the indemnity clause, manifested its assent to those terms [690-691].

Indemnity clauses appearing in certain contracts between a hazardous waste disposal company and two of its customers were not rendered unenforceable under § 107 (e) (1) of the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9001 et seq., where the parties to the contracts merely transferred financial responsibility between themselves for losses arising from the handling of the hazardous waste, while still remaining liable to the government. [691-693]

Indemnity agreements for liability and loss arising from the handling of hazardous waste entered into prior to the enactment of the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9001 et seq., encompassed the strict liability mandated by CERCLA, where the language of the agreements was broad, clear and unambiguous, in the context of State laws that imposed strict

---

[1]Occidental Chemical Corporation.

[2]By stipulation of dismissal Rollins Environmental Services, Inc., the parent company of Rollins Environmental Services (NJ), Inc., is not a party to this action.

liability in tort for ultrahazardous activities, and where the parties could have specifically excluded strict liability from the agreements if they had so intended. [693-696]

Summary judgment in an action seeking declaratory relief was properly rendered where no genuine issue of material fact was raised by the materials submitted by the opposing party. [696-697]

CIVIL ACTION commenced in the Superior Court Department on October 16, 1989.

The case was heard by *Patti B. Saris*, J., on motions for summary judgment, and entry of separate and final judgment was ordered by *Barbara A. Dortch*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Pamela S. Gilman* (*Jennifer Ellis Burke* with her) for the defendant.

*James E. McGuire* (*Catherine E. Reuben* with him) for the plaintiffs.

LYNCH, J. The defendant appeals from a Superior Court judgment granting the plaintiffs' motion for declaratory relief and ruling that the defendant is obligated to indemnify the plaintiffs for costs associated with a hazardous waste cleanup performed pursuant to the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9001 et seq. (1988 & Supp. III 1991). The defendant, Rollins Environmental Services (NJ), Inc. (Rollins), operates a waste disposal facility in Bridgeport, New Jersey, where it disposes of hazardous waste materials through incineration and other chemical and biological processes for customers throughout the country. Polaroid Corporation (Polaroid) and Hooker Chemical Corporation (Hooker), the predecessor company of the plaintiff Occidental Chemical Corporation (Occidental), were customers of Rollins during the 1970's, whereby Rollins disposed of their hazardous wastes.

The plaintiffs' action sought a determination that Rollins was contractually obliged to indemnify them against liability for hazardous waste spills at a temporary storage facility,

Bridgeport Rental and Oil Service, Inc. (Bridgeport). Although the complaint sets forth several counts, only the declaratory judgment count is presently before this court. The parties filed cross motions for summary judgment and agreed that there was no dispute as to the material facts.

In her well-reasoned opinion, the trial judge concluded that Polaroid and Occidental have valid, binding, and enforceable indemnification contracts with Rollins under which Rollins is to indemnify and to save the plaintiffs harmless from all liability and loss for releases or a substantial threat of release of hazardous substances at the Bridgeport site. She also ruled that § 107 (e)(1) of CERCLA, 42 U.S.C. § 9607 (e)(1), does not prohibit enforcement of contractual indemnity provisions between private parties with respect to CERCLA cleanup costs. We transferred this case from the Appeals Court on our own motion and we now affirm.

The judge set forth the following undisputed facts from the pleadings, depositions, affidavits, and exhibits. In early 1976, Polaroid and Rollins entered into an agreement whereby Rollins agreed to perform waste disposal services for Polaroid. Polaroid gave Rollins a copy of Polaroid's "Supplemental General Conditions for Chemical Waste Disposal Services" (supplemental general conditions) and informed Rollins that agreement to the supplemental conditions was an essential condition to any contract between the parties. Rollins made a number of handwritten and initialed changes and then both Rollins and Polaroid signed the supplemental general conditions which provide in pertinent part:

> "8. *Precautions*
>
> "You shall perform all services hereunder in a careful and workmanlike manner in full compliance with all applicable federal, state and local laws and shall utilize your best efforts to avoid injuries to persons, damage to property or damage to the environment. You further agree to comply with all safety and environmental standards adopted by Polaroid with respect to the handling and transportation, while on Polaroid premises. You

further agree to issue certificates of disposal to Polaroid signifying environmentally proper disposal has been accomplished.

" . . .

"10. *Indemnification*

"You hereby agree to indemnify and save Polaroid harmless from all liability and loss arising from services performed by you or your employees hereunder except where such liability or loss is the result of the negligence of Polaroid or its employees."

From May, 1976, until at least 1980, Rollins provided chemical waste disposal services to Polaroid and transported materials from Polaroid's Massachusetts plants to Rollins' New Jersey plant for treatment. Routinely, Polaroid sent Rollins a completed waste data sheet, a written description, and a sample of the waste to enable Rollins to determine whether its facility could properly treat the waste. Rollins would analyze the waste and return a written proposal with the treatment price and shipping cost to Polaroid. Polaroid would then execute a purchase order and Rollins would pick up the waste. All of Polaroid's purchase orders referenced the supplemental general conditions in a list of "documents which constitute this contract." Copies exist only of the fronts of Polaroid's purchase orders, which include the supplemental general conditions. However, the backs of purchase order forms of that general time period, which contain other terms and conditions, are available.[3]

*The Occidental Purchase Orders.*

Hooker, the predecessor to Occidental, entered into a similar business arrangement with Rollins in late 1970 or early 1971. Hooker operated a chemical manufacturing plant in Hicksville, New York, and contracted with Rollins for waste removal and treatment. Routinely, Hooker submitted pur-

---

[3]Rollins makes no argument on appeal based on the form or incompleteness of the Polaroid agreements.

chase orders which contained the following indemnity clause typed on their fronts:

> "Rollins-Purle (Seller) shall assume all responsibility for injury or damage to the seller, or others, based on or arising out of possession, handling, or use by seller, or by others of any such material for any purpose whatsoever. The seller shall hold and save the buyer harmless of and from any and all claims, demands, damages, actions, and causes of action whatsoever arising from or growing out of possession, handling, or use by seller or by others of materials purchased."

The purchase orders also stated:

> "IMPORTANT: ALL TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE HEREOF ARE A PART OF THIS CONTRACT.
>
> "INSTRUCTIONS:
> "1. INVOICE IN DUPLICATE
> "2. INCLUDE PACKING LIST WITH ALL SHIPMENTS
> "3. FILL IN ACKNOWLEDGMENT COPY AND RETURN IMMEDIATELY
> "4. ADVISE AT ONCE IF YOU CANNOT DELIVER ON DATE SPECIFIED
> "5. PREPAY AND ADD ALL FREIGHT
> "6. NO SHIPMENTS ACCEPTED AFTER 3 P.M."

Although Occidental has produced copies of the fronts of the purchase orders with the preceding language, they have not produced the reverse side of the documents. From 1971 through 1976, thirteen of the fourteen purchase orders issued by Hooker contained the preceding indemnity clause and instructions. Rollins never returned the acknowledgment copies of an order containing the indemnity language. This indemnity language was used on Hooker's purchase orders without objection from Rollins until January 6, 1977, when Rollins

refused a Hooker purchase order because it objected to the typed indemnity clause. At Rollins' behest, the parties thereafter adopted an indemnification clause which provided indemnification only for Rollins' negligent acts.

During the course of doing business with both Polaroid and Hooker, Rollins sometimes stored the plaintiffs' waste materials in the Bridgeport "tank farm" until Rollins' facility was able to process the waste. Several hazardous waste spills occurred at Bridgeport during the 1970's. In August of 1988, the United States Environmental Protection Agency (EPA) notified Polaroid and Occidental that, as waste generators, they were potentially responsible parties under CERCLA and would be held jointly and severally liable for investigation and remediation costs incurred by the government. The EPA asserted that Polaroid was potentially responsible as the generator of waste shipped to Bridgeport on October 17, 1973, and seven additional shipments made between August 11, 1976, and April 2, 1977.[4] Occidental is listed as the generator of waste shipped on June 27, 1974, and August 2, 1974.

The New Jersey Department of Environmental Protection has requested potentially responsible parties voluntarily to contribute $9,224,189 to the remediation efforts at the Bridgeport site. Polaroid has paid a small portion but Occidental has paid nothing. Both Polaroid and Occidental requested Rollins to defend and to indemnify them with regard to the Bridgeport site spills but Rollins has refused.

1. Rollins first claims that the indemnity provision in Hooker's purchase order should not have been considered a term of the agreement between Rollins and Occidental. Rollins asserts that, because a portion of the complete contract — the back page of the purchase order — is missing, the remaining terms including the indemnity clause cannot be construed fairly. Rollins cites no case law on point for this

---

[4]On reconsideration of her initial decision, the trial judge held that the record contained insufficient information to connect Polaroid's liability for the 1973 spill to Rollins. By agreement between the parties the 1973 shipment is not before this court.

proposition but rather extrapolates from general rules of contract construction. Rollins agrees with the judge's choice of law analysis and determination that New Jersey law applies to the relationship between Rollins and Occidental.

While it is true that a general rule of contract construction is that contracts should be construed as a whole, when the court is satisfied that an original document is not available, the party seeking to prove the content may offer secondary evidence to determine the content of a contract. See *Lubarr* v. *Royal Woodwork, Inc.*, 70 N.J. Super. 1, 8 (App. Div. 1961). See also *Old Colony Trust Co.* v. *Shaw*, 348 Mass. 212, 219 (1964); *Capitol Bank & Trust Co.* v. *Richman*, 19. Mass. App. Ct. 515, 520-521 (1985). Occidental has met its burden of proof by producing copies of the indemnity clause it is seeking to enforce. The indemnity clause makes no reference to other provisions of the contract. In the absence of evidence that the reverse side of the contract modified the indemnity clause, the clause applies. Indeed, as the judge pointed out, since the indemnity clause is a typewritten provision, it would supersede any inconsistent printed provisions on the reverse side of the purchase order. 3 A. Corbin, Contracts § 548 (1960 & Supp. 1993).

Rollins argues in the alternative that it rejected the indemnification language by not returning the acknowledgment copy of the purchase agreement as requested. Although the purchase orders requested acknowledgment of the terms of the contract, Rollins routinely completed performance pursuant to the terms of the purchase order without returning an acknowledgment and without objecting to the indemnity clause. If an offeror prescribes an exclusive method of acceptance, only an acceptance in the manner prescribed will bind the offeror; but if an offeror merely suggests a permitted method of acceptance, other methods of acceptance are not precluded. Restatement (Second) of Contracts § 30 comment b (1981).

There is no suggestion from the purchase order that acknowledgment and return of the purchase order was the sole means of acceptance. Although silence does not ordinarily

manifest assent, the relationship between the parties or other circumstances may justify the assumption that silence indicates assent to the proposal. *Weichert Co. Realtors* v. *Ryan*, 128 N.J. 427, 436 (1992). Moreover, when an offeree accepts the offeror's services without expressing any objection to the offer's essential terms, the offeree has manifested assent to those terms. *Id.* Prior to 1977, Rollins did not give any indication that it rejected the indemnification clause, and it performed pursuant to all of the other terms of the purchase orders issued by Hooker. Although Rollins did object to the indemnification clause in 1977 and negotiated a change with Hooker, there is no indication that the parties understood that the change would be retroactive or otherwise affect past course of dealings. Accordingly, Rollins' performance in compliance with the terms of the agreement without objecting to the indemnity clause constitutes acceptance of the offer's terms. Accord *Allied Steel & Conveyors, Inc.* v. *Ford Motor Co.*, 277 F.2d 907, 911-913 (6th Cir. 1960); *U.S. Ore Corp.* v. *Commercial Transp. Corp.*, 369 F. Supp. 792, 796 (E.D. La. 1974); *Joseph* v. *Atlantic Basin Iron Work Inc.*, 132 N.Y.S.2d 671, 672-673 (1954), aff'd, 285 A.D. 1147 (N.Y. 1955).

2. The defendant next argues the indemnification clauses do not apply because CERCLA prohibits enforcement of such clauses. Section 107 (e)(1) provides:

> "No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section."

A majority of Federal courts that have addressed this question have held that responsible parties may not avoid liability

to the government by contract but may transfer financial responsibilities among themselves. See *United States* v. *Hardage*, 985 F.2d 1427, 1433 (10th Cir. 1993) (plain meaning of statute provides right to obtain indemnification for liability); *In re Hemingway Transp., Inc.*, 126 B.R. 650 (Bankr. D. Mass 1991), aff'd, 954 F.2d 1 (1st Cir. 1992) ("it is clear that private parties may contract to transfer financial responsibilities under CERCLA"); *Niecko* v. *Emro Mktg. Co.*, 769 F. Supp. 973, 988-989, 991 (E.D. Mich. 1991), aff'd, 973 F.2d 1296 (6th Cir. 1992) (nothing in act or legislative history precludes parties from shifting CERCLA's financial liability among themselves); *Jones-Hamilton Co.* v. *Kop-Coat, Inc.*, 750 F. Supp. 1022, 1027 (N.D. Cal. 1990), aff'd in part and rev'd in part sub nom. *Jones-Hamilton Co.* v. *Beazer Materials & Servs., Inc.*, 973 F.2d 688 (9th Cir. 1992) (CERCLA does not impinge on freedom of private parties to contract amongst themselves). Accord *Griffith* v. *New England Tel. & Tel. Co.*, 32 Mass. App. Ct. 79, 83-84 (1992) (interpreting parallel Massachusetts statute to CERCLA with identical language and enforcing indemnity clause), *S.C.*, 414 Mass. 824 (1993).

In support of its position, the defendant relies on the reasoning of a Federal District Court which has since been overruled by the Court of Appeals for the Sixth Circuit. *AM Int'l, Inc.* v. *International Forging Equip. Corp.*, 743 F. Supp. 525, 529 (N.D. Ohio 1990) (prohibiting enforcement of indemnity provision under CERCLA), aff'd in part and rev'd in part, 982 F.2d 989, 993-994 (6th Cir. 1993) (logic and public policy support interpretation that permits parties to transfer financial liability while remaining liable to government for cleanup costs). We agree with the Sixth Circuit Court of Appeals that the interpretation advanced by Rollins would apply only if the statute is internally inconsistent and such an interpretation should be avoided where possible. *Niecko* v. *Emro Mktg. Co.*, 973 F.2d 1296, 1300-1301 (6th Cir. 1992).

Contrary to the defendant's contention, there is nothing in the legislative history of § 107 (e)(1) to the contrary. See

126 Cong. Rec. 30,984 (1980) (noting Senator's concern that companies will use economic power to transfer liability under act all together). By holding responsible parties liable to the government and yet permitting them to contract privately for indemnity we are not allowing them to "transfer liability under the act all together." *Id.* Accordingly, the indemnity clauses between Rollins and Polaroid are enforceable under CERCLA. Although the Supreme Court of New Jersey has not yet decided this question, we believe New Jersey would be in accord with a majority of Federal courts that have. Therefore, the indemnity clause between Rollins and Hooker is also enforceable.

3. Rollins next asserts that the indemnity provisions do not encompass CERCLA liability because CERCLA had not been enacted at the time the parties entered into the contracts. Since liability under CERCLA is retroactive, however, it is at least reasonable to assume that Congress anticipated that preexisting indemnity agreements would be called into play under CERCLA. *United States* v. *Conservation Chem. Co.*, 653 F. Supp. 152, 240 (W.D. Mo. 1986). Federal courts that have examined this issue have held that indemnity agreements entered into prior to the enactment of CERCLA cover CERCLA liability if the language is broad enough to encompass "any and all claims" or clearly refers to environmental liability. See *John S. Boyd Co.* v. *Boston Gas Co.*, 992 F.2d 401, 406 (1st Cir. 1993) (interpreting Massachusetts law and requiring broadly-phrased indemnity provision); *Purolator Prods. Corp.* v. *Allied-Signal, Inc.*, 772 F. Supp. 124, 132-133 (W.D. N.Y. 1991) (indemnity agreement entered into prior to CERCLA applicable to CERCLA liability where terms were broad enough to encompass "any and all claims" including claims for environmental liability); *Mobay Corp.* v. *Allied-Signal, Inc.*, 761 F. Supp. 345, 357-358 & n.15 (D. N.J. 1991) (court cannot expect parties executing a contract prior to CERCLA to have foreseen statute, but contract must at least mention that one party is assuming environmental-type liabilities or contain broadly worded clause waiving all liability).

We have said that "laws enacted after the execution of an agreement are not commonly considered to become part of the agreement unless its provisions clearly establish that the parties intended to incorporate subsequent enactments into their agreement." *Arthur D. Little, Inc.* v. *Commissioner of Health & Hosps. of Cambridge*, 395 Mass. 535, 551 n.13 (1985), quoting *Feakes* v. *Bozyczko*, 373 Mass. 633, 636 (1977). Under Massachusetts law, therefore, the interpretation of the indemnification clause turns on the "expectations and intentions of the parties, at the time of agreement, with regard to the future effect of [the clause]." *Feakes* v. *Bozyczko, supra*. The same is true under New Jersey law. *Cozzi* v. *Owens Corning Fiber Glass Corp.*, 63 N.J. Super. 117, 121 (App. Div. 1960).

The record reflects that advertising literature distributed by Rollins during the time period in question referred to the quickly changing environmental regulations and assured compliance with applicable laws. The language of the indemnification clause is unambiguous and does not indicate any restriction in the indemnity protection offered by the defendant. Although the defendant claims that environmental liability at the time the contracts were signed was on a fault basis and CERCLA's strict liability could not possibly have been anticipated by the parties, strict liability in tort for ultrahazardous activities existed in Massachusetts and New Jersey at the time the contracts were created. See *Clark-Aiken Co.* v. *Cromwell-Wright Co.*, 367 Mass. 70, 72-73 (1975) (strict liability for harm caused by escape of dangerous instrumentality has been law of Commonwealth since 1868); *T & E Indus., Inc.* v. *Safety Light Corp.*, 123 N.J. 371, 392-394, 397-398 (1991) (holding party who improperly disposed of radium between 1917 and 1926 strictly liable under "abnormally-dangerous activities" tort doctrine and ordering defendant to indemnify subsequent owners for cleanup costs); *Berg* v. *Reaction Motors Div., Thiokol Chem. Corp.*, 37 N.J. 396, 410 (1962) ("an ultrahazardous activity which introduces an unusual danger into the community . . . should pay its own way in the event it actually

causes damage"). See also *State, Dep't of Envtl. Protection v. Ventron Corp.*, 94 N.J. 473, 494-495 (1983) (examining early pollution laws and noting, as early as 1937, imposition of strict liability on anyone who allowed pollutant to enter State waters). Thus, the defendant's assertion that pollution liability was solely fault-based at the time the parties entered into their contracts is unfounded. The parties could have and should have specifically excluded strict liability from the indemnification clause if they so intended. Therefore, we agree that, where the parties were aware of changing regulations and strict liability was a tenable claim, a broadly phrased indemnity clause entered into prior to CERCLA's enactment is sufficient to encompass CERCLA's strict liability.

CERCLA imposes strict liability on generators and transporters of hazardous waste for environmental damage resulting from the release of hazardous wastes. Rollins promised to indemnify Polaroid from "all liability" arising from Rollins' services. The subject matter of the entire contract concerned environmentally hazardous material. Whereas Rollins' services included selection of the storage site, transportation of the waste to the Bridgeport site, and storage of the waste at the Bridgeport site where the spill occurred, Polaroid's liability arose from Rollins' services.[5] The indemnity provision, therefore, is broad enough to encompass liability under CERCLA.

The Hooker indemnity clause is even more specific and provides: "The seller shall hold and save the buyer harmless of and from *any and all* claims, demands, damages, actions, and causes of action *whatsoever* arising from or growing out of *possession, handling, or use by seller or by others* of

---

[5] We reject Rollins' assertion that Polaroid and Occidental's CERCLA liability arises from only their generator status and not from Rollins' services. While it is true that the plaintiffs' liability to the government arises from their generator status, the plaintiffs did not generate their waste at Bridgeport. Rather it was Rollins' storing the waste at Bridgeport that gives rise to its duty to indemnify the plaintiffs. Insofar as the court in *United States v. Hardage*, 985 F.2d 1427, 1435 n.5 (10th Cir. 1993), concludes differently, we decline to follow.

materials purchased" (emphasis added). This language is also broad enough to obligate Rollins to indemnify Occidental's liability under CERCLA. The spill at the Bridgeport site arose from the possession and handling by Rollins and "others" of the hazardous waste purchased by Rollins. The language is clear, unambiguous, and does not exclude strict liability. It is broad enough to encompass CERCLA liability.

4. Rollins argues, finally, that the judge inappropriately granted summary judgment because a genuine issue of fact was raised by a Rollins employee's affidavit averring that Rollins did not intend to indemnify the plaintiffs for the type of strict liability imposed by CERCLA. "When presented with a motion for summary judgment, the judge must consider 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' to determine whether summary judgment is appropriate." *Conley* v. *Massachusetts Bay Transp. Auth.*, 405 Mass. 168, 173 (1989), quoting Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). See *Siriotis* v. *Gramuglia*, 254 N.J. Super. 223, 226 (Law Div. 1991). "Summary judgment is appropriate if there is no genuine issue of any material fact and the moving party is entitled to a judgment as a matter of law." *Conley* v. *Massachusetts Bay Transp. Auth.*, *supra.* The evidence should be considered "with an indulgence in the [opposing party's] favor." *Id.*, quoting *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Eng'rs, Inc.*, 396 Mass. 818, 822 (1986).

The affidavit of an officer of Rollins' parent company demonstrated his belief that the company policy in force at the times the Polaroid and Hooker contracts were created did not intend to indemnify strict liability. An affidavit must set forth specific facts showing that there is a genuine issue for trial; bare assertions and conclusions regarding a company officer's understandings, beliefs, and assumptions are not enough to withstand a well-pleaded motion for summary judgment. See *Madsen* v. *Erwin*, 395 Mass. 715, 719, 721 (1985); *Key Capital Corp.* v. *M & S Liquidating Corp.*, 27 Mass. App. Ct. 721, 727-728 (1989). Moreover, a contracting party's objective intention dictates and a party is

bound by its outward manifestations to the other party. *Hagrish* v. *Olson*, 254 N.J. Super. 133, 139 (1992); Restatement (Second) of Contracts § 2 comment b (1981). Cf. *Champlin* v. *Jackson*, 317 Mass. 461, 464 (1945). Rollins has not shown that it made any outward manifestations indicating an intent to indemnify only its negligent acts. Regardless of the officer's personal belief of the intent of indemnification clauses, he was not personally involved in the negotiations and nothing in his affidavit, the language of the indemnification clauses, or the remaining evidence shows that Rollins indicated to Polaroid or Occidental an intent to limit its indemnification liability to negligence only. Accordingly, the officer's affidavit does not raise a genuine issue of material fact.

*Judgment affirmed.*