Borenstein, J.
Third-parfy plaintiffs (“plaintiffs”) are seeking indemnification from third-parfy defendants for money paid in settlement of the underlying tort claim brought by Douglas Grant.[5] Both parties have moved for summary judgment. For reasons set forth more fully below, plaintiffs’ motion is allowed, defendant’s motion is denied. 
BACKGROUND
I. Overview
Douglas Grant, while employed by defendant, slipped and fell on the garage ramp of the State Street Bank Building on February 5, 1990 and suffered a serious head injury. Grant sued plaintiffs and Unicco Services Co., Inc., a contractor who provided snow and ice removal services on the subject premises. Plaintiffs thereafter filed a third-parfy action against defendant and Morse Diesel. All three defendants in the underlying action settled the case with Grant for a total of $1.1 million; of this amount, plaintiffs each paid $325,000. Plaintiffs are now seeking indemnification from defendant, based upon a written subcontract between defendant and Morse.
II. Statement of Undisputed Facts
Hexalon was, at all relevant times, the owner of the State Street Bank Building, located at 225 Franklin Street in Boston. LaSalle was, during the same period, Hexalon’s managing agent for the building. On March 16, 1989, LaSalle entered into a general contract with Morse Diesel for a renovation project at the State Street Bank building. The renovation in part called for the modernization of the elevators in the building.
Defendant submitted a contract proposal to perform the elevator work. On the subject of indemnification, the proposal stated, in part, that;
Armor will not, under any circumstances, be liable for any losses, expenses . . . demands and claims made by any party because of bodily injury ... or property damage, whether arising out of breach of contract, warranty, tort (including negligence), or otherwise, except those directly caused by the acts or omissions of Armor, its agents, servants or employees.
Morse accepted defendant’s bid, and the latter began work on the project without awaiting the final negotiation and execution of the subcontract with Morse. In May, 1989, Morse submitted a draft subcontract to defendant. It included a standard-form provision entitled “ARTICLE 9: Indemnification and Insurance” (hereafter referred to as the “typewritten provision”) which provided, in part, that
A. To the extent permitted by law, each subcontractor shall indemnify, defend, save and hold the Owner [Hexalon and LaSalle], the Contractor [Morse Diesel] . . . harmless from and against all liability, damage, loss, claims, demands and actions of any nature whatsoever which arise out of or are connected with, or are claimed to arise out of or be connected with:
(1) The performance of the Work by the Subcontractor, or any act or omission of Subcontractor;
*312 (2) Any accident or occurrence which happens, or is alleged to have happened, in or about the place where such Work is being performed or in the vicinity thereof (a) while the Subcontractor is performing the Work, either directly or indirectly through a sub-contractor or material agreement, or (b) while any of the Subcontractor’s property, equipment or personnel are in or about such place or the vicinity thereof by reason of or as a result of the performance of the Work; or
(3) The use, misuse, erection, maintenance, operation or failure of any machinery or equipment . . . whether or not such machinery or equipment was furnished, rented or loaned by the Owner or the Contractor or their officers, employees, agents, servants or others, to the Subcontractor.
. .. The provisions of the indemnity provided herein shall not be construed to indemnify any Indemnitee for its sole negligence if not permitted by law . . .
In a letter to Morse dated July 10, 1989, defendant forwarded executed originals of the subcontract along with a document entitled “Armor Rider No. 1,” which made various changes to the proposed subcontract, including the following changes to the indemnity language set forth above: the word “defend” was deleted from the first paragraph; the word “negligent” was inserted between “[t]he” and “performance” in paragraph A(l); paragraphs A(2) and A(3) were deleted in their entirety; and the phrase “if not permitted by law” was deleted from the last paragraph.
Morse Diesel did not accept Rider No. 1. In a letter dated September 11, 1989, defendant proposed an alternative indemnity provision to Morse, entitled “Armor Rider No. 1 (revised).” The revised rider offered the following revision to the subcontract:
Article 9 — Add
Not withstanding the foregoing the following indemnity shall apply;
Armor hereby agrees to indemnify and save harmless the Owner [Hexalon and LaSalle] and any of its subsidiaries from and against all liability claims and demands on account of injury to persons including death resulting therefrom and damage to property arising out of the performance of this contract by Armor, its employees, and agents, except out of the negligence of the Owner [Hexalon or LaSalle] or any of its subsidiaries. Armor shall, at its own expense, pay all attorney fees and other expenses and promptly discharge any judgment arising therefrom. These conditions shall also apply to any subcontracted operations.
In late October 1989, Morse’s Steven Keith and Armor’s Vincent Civello met to finalize the outstanding contract issues, including the indemnity language. At the conclusion of the meeting, Keith hand-wrote in the margin, on one of the pages which included the typewritten provision, Armor’s revised Rider No. 1. However, Keith made several changes to revised Rider No. 1 before writing it in the margin, including: “Article 9 — Add" was changed to “Add to Article 9”; the language ’’save harmless the Owner [Hexalon and LaS-alle] and any of its subsidiaries from and against all liability claims ..." was changed to “save harmless the Owner and any of its subsidiaries, the Owner’s Agent, and Morse/Diesel from and against all liability claims ...’’; the phrase “arising out of the performance of this contract by Armor” was changed to “arising out of this contract by Armor”; and the term “sole” was inserted before the word “negligence.”
The handwritten provision and other amendments resulting from the Keith/Civello summit were forwarded to Armor’s vice president, Calvin Brast. On October 31, 1989 Brast authored a handwritten “note to file” which stated;
We have agreed to initial and return contract document changes as marked. The ... indemnification [in] Article 9 is not what we want. Due to condition of job being in progress and delays in getting this document signed we have agreed to accept the changes as modified.
The final version of the subcontract was executed by Morse on November 16, 1989. Article 9 appeared as it had when Morse first submitted the subcontract to defendant in May 1989, with the handwritten indemnity clause included in the margin.
III. Procedural History
Prior to the settlement of the Grant portion of the case, the parties filed cross-motions for summary judgment, arguing respectively that the indemnity clause in the subcontract entitled each to judgment as a matter of law. Among other disputes, the parties disagreed on whether the typewritten or handwritten indemnity clause controlled. The arguments made by the parties in those motions were essentially the same as those made in support of this motion. On May 13, 1994, Judge Neel denied the cross-motions [2 Mass. L. Rptr. No. 9, 163 (July 4, 1994)]. Judge Neel found that two separate factual disputes precluded summary judgment. First, there was a dispute as to whether the handwritten clause was intended to replace the typewritten clause. Second, the judge found that there was a dispute as to the interpretation of the handwritten clause. Judge Neel opined that the handwritten clause, as written, appeared to violate G.L.c. 149, §29C (“§29C”). Specifically, Judge Neel noted that the absence of the language “arising out of the performance of the contract by Armor,” left open the possibility that Armor would be required to indemnify for an injury or damage which it in no way caused. Such an obligation runs afoul of §29C. Both parties filed motions for reconsideration, which were summarily denied by Judge Neel without a written opinion.
*313 At the final pretrial conference for this case, the parties and the Court agreed that the issues identified by Judge Neel could be decided by the Court as a matter of law.
DISCUSSION
This is a dispute over contract interpretation. The plaintiffs contend that the handwritten clause was intended to be, at the most, an addition to the typewritten indemnity language in the contract. When read as a whole, the indemnity provision passes muster under §29C. Furthermore, the indemnity provision was triggered by the accident in this case. Defendant counters that the handwritten clause was designed to replace the typewritten provision. Standing alone, the handwritten clause, as suggested by Judge Neel, violates §29C. Even if the clause is valid under §29C, summary judgment is not appropriate on the issue of whether the indemnity clause was triggered because there are disputes of material fact as to whether plaintiffs were solely responsible for Grant’s injuries.
I. Validity of Indemnity Provision
In their respective efforts to carry the day, the parties have besieged the Court with numerous canons of contract interpretation. The smoke having cleared, the Court is guided by a few choice principles in its effort to resolve this dispute. First, a court is to construe the language of a contract so as to ascertain and effectuate the intent of the parties as manifested by the language used and the object to be accomplished. MacDonald v. Gough, 326 Mass. 93, 96 (1950). The same rule controls when the court is construing a contract of indemnity. Shea v. Bay State Gas Co., 383 Mass. 218, 222 (1981); Whittle v. Pagani Bros. Constr. Co., Inc., 383 Mass. 796, 798 (1981). Second, where there is a conflict between a printed portion of a contract and a subsequently added written or typewritten provision, the latter must prevail as it is “more likely to represent the intent of the parties.” King Features Syndicate, Inc. v. Cape Cod Broadcasting Co., Inc., 317 Mass. 652, 654 (1945); Polaroid Corp. v. Rollins Environmental Services, 416 Mass. 684, 690 (1993); Carrigg v. Cordeiro, 26 Mass.App.Ct. 611, 616-17 (1988).
Reminding the Court that the terms of a contract must be given their plain and ordinary meaning, plaintiffs argue that the words “Add to" at the beginning of the handwritten clause unambiguously establish that it was intended to supplement rather than supplant the typewritten provision. Defendant counters that evidence of its negotiations with Morse demonstrate that the handwritten clause was intended to control. Alternatively, defendant asserts that, regardless of the parties’ intent, the two provisions are irreconcilable and therefore, in accordance with basic principles of contract interpretation, the handwritten clause must prevail. The Court agrees with defendant on both grounds.
The well-documented course of negotiations between defendant and Morse reveals that the former objected to the typewritten provision and submitted Rider No. 1 as an alternative. Signaling a willingness to abandon the typewritten provision, Morse began negotiating over Rider No. 1, and later revised Rider No. 1, to satisfy its interests. Ultimately, Morse’s version of revised Rider No. 1, unpalatable to defendant, was accepted and inserted as it appears in the final version of the subcontract. In the Court’s opinion, this evidence is sufficient to establish that the parties intended that the handwritten clause would supplant the typewritten provision.
Even if the Court were unable to divine such an intent, the fact that the two provisions are utterly irreconcilable compels the same result. At oral argument, plaintiffs’ counsel pointed out that where defendant and Morse disagreed over language in other parts of the subcontract, the objectionable portions were crossed out or otherwise physically altered so as to clearly indicate the parties’ intention to strike that language. Consequently, plaintiffs argue, it is inconceivable that the parties would intend to strike out the typewritten provision without interlining or otherwise altering it. In addition, plaintiffs appealed to common sense, noting that the handwritten clause was prefaced by the caption “Add to Article 9.” Therefore, plaintiffs argue, “Add to” must mean “add” not “replace” or “supersede.” Yet, significantly, counsel was unable to offer the Court any reasonable explanation of how the indemnify provisions can peacefully coexist. In fact, they cannot. For example, paragraph A(l) of the typewritten provision requires defendant to indemnify against claims arising out of “(t]he performance of Work by the [defendant], or any act or omission of [defendant].” However, this obligation is embraced by the language of the handwritten clause, specifically the requirement that defendant indemnify for any injury or damage “arising out of this contract by Armor.” On the other hand, the indemnity obligation set forth in paragraphs A(2) and (3) of the typewritten provision, which Judge Neel characterized as “less clearly in compliance” with §29C, are conspicuously absent from the handwritten clause. This omission is consistent with defendant’s position during negotiation of the subcontract that it would not undertake such an obligation. In particular, after receiving the initial draft of the typewritten provision from Morse, defendant indicated that it objected to paragraphs A(2) and (3) in their entirety.
Ultimately, then, the Court is left with two provisions which directly contradict one another. Consequently, where, as here, there is a conflict between printed, standard-form language and subsequently added handwritten language, the latter must control. King Features, supra.; Carrigg, supra. The question remains as to what extent the typewritten provision is replaced.
*314 Aside from the conflict involving paragraphs A(l), (2) and (3), discussed above, there is only one area of dispute which is material to the dispute over the extent to which the typewritten provision was supplanted by the handwritten language.[6] Paragraph A is prefaced by the phrase “to the extent permitted by law,” which plaintiffs characterize as a “savings clause.” Plaintiffs contend that the savings clause remains part of the contract regardless of which indemnify provision controls. On the other hand, defendant asserts that the savings clause was part of the language superseded by the handwritten clause. Defendant’s position is without merit. In particular, there is no conflict whatsoever between the savings clause as it applied to the typewritten provision and how it applies to the handwritten clause. Furthermore, there is no evidence in the correspondence between Morse and defendant that the latter found the savings clause objectionable. In fact, it seems inconceivable that a party, intending to provide some form of indemnity, would object to language which would ensure the enforceability of such a clause. Granted, the savings clause necessarily broadened the scope of indemnity in this case; however, the evidence demonstrates that defendant initially objected to such an expansion of coverage but ultimately relented.
In the end, when the handwritten clause is read in conjunction with the savings clause, the resulting indemnity provision passes muster under c. 149, §29C in that it requires indemnity for any injury or damage which is caused, at least in part, by defendant. Callahan v. A.J. Welch Equip. Corp., 36 Mass.App.Ct. 608, 611 (1994); see also M. DeMatteo Constr. Co. v. A.C. Dellovade, Inc., 39 Mass.App.Ct. 1, 3 (1995). Specifically, the handwritten clause provides that defendant shall indemnify for claims “arising out of this contract by Armor.” Tire Court determines that this language may be read as triggering indemnity for claims arising out of the performance of the contract by defendant.[7]
Such an interpretation is reasonable given the plain language of the contract and, more importantly, effectuates the intent of defendant and Morse in making the contract. A careful review of the negotiations between defendant and Morse reveals that defendant intended to provide some indemnification to Morse and plaintiffs. A dispute arose over the scope of defendant’s obligation. It is clear from the correspondence between Morse and defendant that the latter was reluctant to provide indemnify for any injury or property damage that was not solely caused by defendant or its employees. This fact is evident in the proposed indemnity language submitted by defendant. Had defendant convinced Morse to accept that language, the claim for indemnification in this case may likely have failed. However, it is undisputed that defendant did not have its way. Instead, Morse insisted that defendant provide indemnification for any injuries or damage which it solely or partly caused, and only excluded defendant’s obligation when the damage was caused solely by the negligence of Hexalon or LaSalle. Simply put, Morse wanted to obtain the broadest possible indemnification coverage “to the extent permitted by law.” This- was a bitter pill for defendant to swallow; however, evidence submitted by defendant clearly establishes that defendant begrudgingly swallowed that bitter pill by signing a contract which included an indemnity provision which was “not what we want.” The defendant cannot now ask the Court to clothe it with the protection which it was unable to obtain during negotiations between two sophisticated business entities with equal bargaining power.
The Court having determined that a valid indemnity clause binds the parties, the question remains whether that clause was triggered by the facts of this case.
II. Was the Indemnity Clause Triggered?
The indemnity clause provides that defendant is obligated to indemnify for any claims “arising out of this contract by Armor.” As noted above, this language, when read together with the savings clause, covers claims “arising out of the performance of the contract by Armor.” Plaintiffs contend that defendant’s obligation is triggered given the undisputed fact that Grant was en route to the work site when he was injured. In support of their argument, plaintiffs cite Farren v. General Motors Corp., 708 F.Supp. 436, (D.Mass. 1989). There, the court held that a clause which required indemnity for claims “in connection with the work attributable to the contractor,” was triggered when an employee of the indemnitor was injured while returning to his work site from a lunch break. Id. at 448-49. The court (noting the dearth of Massachusetts decisions addressing the issue before it), was persuaded by the reasoning of the New York Court of Appeals which held, in a case with an analogous set of facts, that indemnity is appropriately triggered when a worker is injured en route to or from a work site because “(t]he contract could not be performed, of course, unless [the subcontractor’s] employees could reach and leave their work places on the job site.” Id. at 449, quoting O’Connor v. Serge Elevator Co., 444 N.E.2d 982, 983, 458 N.Y.S.2d 518, 519 (1982).
The Court is likewise persuaded by the reasoning of Farren and O’Connor. It is undisputed that Grant was en route to his fixed place of employment on the thirty-second floor of the State Street Bank building when he was injured. As such, his injury arose out of the performance of the contract by defendant.
Undaunted, defendant insists that, regardless of whether Grant’s injury is found to have arisen out of its performance of the contract, there must be some showing of negligence on its behalf before its indemnity obligation is triggered. To hold otherwise, defendant argues, would in effect only require a “but-for” causal relationship between the accident and the conduct of the subcontractor. Such a result would seri *315 ously undermine §29C’s basic purpose of protecting subcontractor’s from overreaching indemnity requirements. However, defendant’s appeal to fairness is nothing more than an attempt to “reintroduce” negligence as a requirement under §29C; such an attempt was recently rejected in DeMatteo, supra. There, the Appeals Court succinctly stated that §29C “no longer requires a finding of negligence in order to trigger indemnity provisions.” 39 Mass.App.Ct. at 4.
Nevertheless, all of these considerations aside, the ultimate determination of whether the indemnity provision is triggered by the facts of this case is resolved by looking to the language of the indemnity provision itself. Specifically, the handwritten clause provides that defendant must indemnify for any injury or property damage arising out of its performance of the contract except where it was caused by the sole negligence of Hexalon or LaSalle. Defendant contends that summary judgment is inappropriate because the version of events which it hopes to prove in this case are sufficient to convince a jury that Grant’s injuries were caused by the sole negligence of either Hexalon or LaSalle. The Court disagrees. Given the undisputed fact that Unicco was responsible for snow and ice removal at the State Street Bank building, under no conceivable set of facts could defendant prove that either Hexalon or LaSalle was solely negligent in causing Grant’s injuries. Accordingly, summary judgment should enter for plaintiffs on the issue of whether the indemnify clause was triggered.
ORDER
For the foregoing reasons, Hexalon and LaSalle’s motions for summary judgment are ALLOWED, and Armor’s cross-motion is DENIED.

Prior to oral argument on these motions, plaintiffs settled their indemnity claim against Morse. Hereafter, the Court will refer to Armor Kone Elevator as “defendant.”

There is a dispute between defendant and Morse on the issue of defense. A duty to defend is provided for in the typewritten provision, while it is absent from the handwritten clause. Whether or not the handwritten clause superseded, and therefore eliminated, the duty to defend is an issue which the Court need not resolve on these motions for summary judgment. As indicated at oral argument, defendant and Morse will brief the issue and thereafter a decision may more appropriately be rendered.

Defendant asserts that the handwritten clause cannot be interpreted as such given that Steve Keith, Morse’s representative, intentionally deleted the phrase “the performance of’ because he wanted to obtain the broadest coverage possible. However, the Court is charged with interpreting fire contract so as to ascertain and effectuate the intent of the parties. In doing so, the Court determines that the handwritten clause, when read in conjunction with the savings clause, can only be interpreted as requiring defendant to indemnify for claims arising out of its performance of the contract.

LaSalle Partners, Inc.

Morse Diesel, Inc.