McCann, J.
The Plaintiff, James M. Konan
(“Konan”), brought this action against the Defendants, Ernest George (“George”), William Crane (“Crane”) and Sterling Suffolk Race Course, LLC (“Suffolk”) upon counts of strict liability and negligence. On February 4, 2002, Suffolk moved for summary judgment pursuant to Mass.R.Civ.P. 56. On February 20, 2002, George filed a concurrence with and joined Suffolk’s summary judgment motion. Konan did not object to the manner in which George joined the summary judgment motion, but opposed it upon the same grounds stated in his opposition to Suffolk’s motion. After a hearing on the summary judgment motion, the Court denies the motion for summary judgment.
FACTS
Suffolk owns and operates Suffolk Downs Racetrack (“Suffolk Downs”), a horse racing facility located in East Boston, Massachusetts. On November 21, 1997, Konan, a self-employed thoroughbred horse trainer, was riding a horse named “Adriatic King” (“King”) at Suffolk Downs for the purpose of evaluating it for potential purchase. King was owned by George, trained by Crane and stabled at Suffolk Downs. Suffolk displayed signs at its racetrack that read:
WARNING: Under Massachusetts law, an equine professional is not liable for injury to, or the death of, a participant in equine activities resulting from the inherent risks of equine activities, pursuant to section 2D of chapter 128 of the General Laws.
*510 Upon entering the racetrack, Konan turned King to the left and rode it approximately twenty lengths in the direction opposite the normal course of track traffic. Konan rode King in this direction to avoid other horses that were coming off the track at the time. King abruptly turned to the right and threw Konan, causing him to fall to the ground and injure his left knee.
DISCUSSION
Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. Mass.R.Civ. 56(c); Highlands Ins. Co. v.Aerovox, Inc., 424 Mass. 226, 232 (1997). The moving party bears the burden of affirmatively demonstrating the absence of triable issues and showing that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who would not bear the burden of proof at trial may demonstrate the absence of triable issues by either submitting affirmative evidence negating an essential element of the non-moving party’s case or by showing that the non-moving party would have no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). To overcome a summary judgment motion, the non-moving party must articulate specific facts establishing the existence of general issues of material facts. Pederson v. Time, Inc., 404 Mass. at 17. Bare assertions or conclusions regarding an individual’s understandings and assumptions are insufficient to withstand a well pleaded motion for summary judgment. Polaroid Corp. v. Rollings Envtl. Servs., 416 Mass. 684, 696 (1993).
Suffolk and George request summary judgment in their favor on the basis of G.L.c. 128, §2D, entitled “Sponsors of, and Liability in Connection With, Equine Activities; Required Warnings; Definitions.”[1] Specifically, these defendants maintain that they are “equine professionals” within the meaning of the statute, and that the plaintiff was engaged in an “equine activity" as defined by the statute at the time of his injury. The Court agrees with these characterizations, based on the facts of the case and the plain meaning of the statute. This, according to the defendants, renders them immune from liability for the plaintiffs injury under G.L.c. 128, §2D(b).
However, subsection (c) of the statute significantly curtails the immunity afforded by G.L.c. 128, §2D. For example, an equine professional is liable under subsection (c) if he provides an equine without ”mak[ing] reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity, and determin[ing] the ability of the participant to safely manage the particular equine based on the participant’s representations of his ability.” An equine professional is also liable under subsection (c) if he “commits an act of omission that constitutes willful or wanton disregard for the safety of the participant, and that act of omission caused the injury.”
These limitations are significant in this case because the parties dispute whether Konan was warned of King’s dislike of being ridden in the “wrong” direction on the racetrack. The defendants maintain that prior to riding King, the plaintiff was warned that the horse was temperamental and disliked being ridden the “wrong” direction on the racetrack. However, Konan states under oath in his answers to Crane’s interrogatories that Crane first informed him of King’s dislike two days after the accident. This raises questions as to whether the defendants made reasonable and prudent efforts to determine the plaintiffs ability to safely ride King, given the horse’s alleged erratic tendencies; and whether the defendants’ alleged failure to warn Konan was an act of omission constituting willful or wanton disregard for Konan’s safely, resulting in his injury. The defendants have not met their burden of affirmatively demonstrating the absence of triable issues, nor have they shown that they are entitled to judgment as a matter of law under G.L.c. 128, §2D. Pederson v. Time, Inc., 404 Mass. at 16-17. There are therefore material questions of fact which preclude summary judgment.
ORDER
For the foregoing reasons, defendant Sterling Suffolk Race Course, LLC’s motion for summary judgment, with which defendant Ernest George concurred and joined, is DENIED.

 G.L.c. 128. §2D:
(a) For the purposes of this section, the following words shall have the following meanings:
“Engage in an equine activity,” riding, training, assisting in veterinary treatment of, driving, or being a passenger upon an equine, whether mounted or unmounted, visiting or touring or utilizing an equine facility as part of an organized event or activity, or assisting a participant or show management. The term “engage in an equine activity” shall not include being a spectator at an equine activity, except in cases where the spectator places himself in an unauthorized area or in immediate proximity to the equine activity.
“Equine,” a horse, pony, mule, or donkey.
“Equine activity,” (1) equine shows, fairs, competitions, performances, or parades that involve any or all breeds of equines and any of the equine disciplines, including, but not limited to, dressage, hunter and jumper horse shows, grand prix jumping, three-day events, combined training, rodeos, riding, driving, pulling, cutting, polo, steeplechasing, English and western performance riding, endurance trail riding, gymkhana games, and hunting; (2) equine training or teaching activities or both; (3) boarding equines, including normal daily care thereof; (4) riding, inspecting, or evaluating by a purchaser or an agent an equine belonging to another, whether or not the owner has received some monetary consideration or other thing of value for the use of the equine or is permitting a prospective purchaser of the equine to ride, inspect, or evaluate the equine; (3) rides, trips, hunts or other equine activities of any type however informal or impromptu that are sponsored by an equine activity sponsor; (6) placing or replacing horseshoes or hoof trimming on an equine; and (7) providing or assisting in veterinary treatment.
“Equine activity sponsor,” an individual, group, club, partnership, or corporation, whether or not the sponsor is operating for profit or nonprofit, which sponsors, orga *511 nizes, or provides the facilities for. an equine activity, including but not limited to: pony clubs, 4-H clubs, hunt clubs, riding clubs, school and college-sponsored classes, programs and activities, therapeutic riding pr grams, stable and farm owners and operators, instructors, and promoters of equine facilities, including but not limited to farms, stables, clubhouses, pony ride strings, fairs, and arenas at which the activity is held.
“Equine professional,” a person engaged for compensation: (1) in instructing a participant or renting to a participant an equine for the purpose of riding, driving or being a passenger upon the equine; (2) in renting equipment or tack to a participant; (3) to provide daily care of horses boarded at an equine facility; or (4) to train an equine.
“Inherent risks of equine activities," dangers or conditions which are an integral part of equine activities, including but not limited to: (1) The propensity of equines to behave in ways that may result in injury, harm, or death to persons on or around them; (2) the unpredictability of an equine’s reaction to such things as sounds sudden movement, and unfamiliar objects, persons, or other animals; (3) certain hazards such as surface and subsurface conditions; (4) collisions with other equines or objects; (5) the potential of a participant to act in a negligent manner that may contribute to injury to the participant or others, such as failing to maintain control over the animal or not acting within his ability.
“Participant," any person, whether amateur or professional, who engages in an equine activity, whether or not a fee is paid to participate in such equine activity.
(b) Except as provided in subsection (c), an equine activity sponsor, an equine professional, or any other person, which shall include a corporation or partnership, shall not be liable for an injury to or the death of a participant resulting from the inherent risks of equine activities and, except as provided in said subsection (c), no participant nor participant’s representative shall make any claim against, maintain an action against, or recover from an equine activity sponsor, an equine professional, or any other person for injury, loss, damage or death of the participant resulting from any of the inherent risks of equine activities.
(c) This section shall not apply to the racing meetings as defined by section one of chapter one hundred and twenty-eight A.
Nothing in subsection (b) shall prevent or limit the liability of an equine activity sponsor, an equine professional, or any other person if the equine activity sponsor, equine professional, or person: (l)(i) provided the equipment or tack, and knew or should have known that the equipment or tack was faulty, and such equipment or tack was faulty to the extent that it did cause the injury; or (ii) provided the equine and failed to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity, and determine the ability of the participant to safely manage the particular equine based on the participant’s representations of his ability; (2) owns, leases, rents, has authorized use of or is otherwise in lawful possession and control of the land, or facilities upon which the participant sustained injuries because of a dangerous latent condition which was known to the equine activity sponsor, equine professional, or person and for which warning signs, pursuant to subsection (d), have not been conspicuously posted; (3) commits an act of omission that constitutes willful or wanton disregard for the safely of the participant, and that act of omission caused the injury; or (4) intentionally injures, the participant. (d)( 1) Every equine professional shall post and maintain signs which contain the warning notice specified in paragraph (2). Such signs shall be placed in a clearly visible location in the proximity of the equine activity. The warning notice specified in said paragraph (2) shall appear on the sign in black letters, with each letter to be a minimum of one inch in height. Every written contract entered into by an equine professional for the providing of professional services, instruction, or the rental of equipment or tack or an equine to a participant, whether or not the contract involves equine activities on or off the location or site of the equine professional’s business, shall contain in clearly readable print the warning notice specified in said paragraph (2). (2) The signs and contracts described in paragraph (1) shall contain the following notice:
WARNING
Under Massachusetts law, an equine professional is not liable for an injury to, or the death of, a participant in equine activities resulting from the inherent risks of equine activities, pursuant to section 2D of chapter 128 of the General Laws.